Carroll,
Jan. 2, 1952.  No. 4084.

Joseph S. Sylvester, Jr., *Ap't*

*v.*

Charles B. Newhall, *Ex'r & a, Ap'ees.*

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Louis E. Wyman* orally), for the appellee Mary Carlyle Fitzgerald.

*Nutter, McClennen & Fish, Robert D. Meserve* and *Harrison F. Lyman* (all of Massachusetts), and *Eliot U. Wyman* (*Mr. Meserve* orally), for the appellee Charles B. Newhall, Executor.

*Joseph A. Locke* (of Massachusetts), *McLane, Davis, Carleton & Graf* and *Stanley M. Brown* (*Mr. Brown* orally), for the appellant Joseph S. Sylvester, Jr.

DUNCAN, J. This probate appeal does not bring in question the requirement of the probate decree that one-half of the personal estate of Lucy S. Fitzgerald be distributed to trustees named in her will. Article fourth of the will provides for division by the trustees of one-half of the residue into "as many equal shares as there are children of mine living at my death and children of mine then deceased leaving issue then living" and it directs that each share so established shall be administered for the benefit of a child of the testatrix, or for the issue of any deceased child. It is recognized by the appellant that the testatrix intended Mary Carlyle Fitzgerald to take as one of her children within the meaning of this article and that she is in fact the only person entitled to the benefit of the portion of the residue thus placed in trust.

The controversy relates to the rights of Mary Carlyle Fitzgerald in the other half of the residue, bequeathed in article third of the will "to my issue living at my death." The words "my issue" are also used in article fourth in providing certain contingent remainder interests in the trust shares. It is the position of the appellant that the will construed in the light of surrounding circumstances indicates an intention on the part of the testatrix that Mary Carlyle Fitzgerald should not take as her "issue." The appellees contend that the testatrix intended that she should.

The words used in the will will be given their ordinary meaning, unless it appears that the testatrix intended otherwise. *Souhegan National Bank* v. *Kenison,* 92 N. H. 117, 119; *McAllister* v. *Hayes,*

76 N. H. 108. The question is whether by using the words "child" or "children of mine" in certain provisions of the will, and the words "my issue" or "issue of mine" in certain other provisions the testatrix intended to include her stepdaughter in the one class, but not in the other. It is clear that but for the provision of article second of the will, Mary Carlyle Fitzgerald would not come within either class. The word "child" ordinarily means a son or a daughter; a descendant in the first degree. Webster's New Int. Dict. (2d *ed.*). The word "issue" is not ordinarily the equivalent of the word "child" or "children." In its ordinary meaning it is "descriptive of the [testatrix'] lineal descendants." *Petition of Oliver Wolcott*, 95 N. H. 23, 25. See also, *Morse* v. *Osborne*, 75 N. H. 487, 488; *Kimball* v. *Penhallow*, 60 N. H. 448, 451. The Legislature has provided that in the construction of statutes unless the context requires otherwise (R. L., c. 7, s. 1), "the word 'issue' as applied to the descent of estates, shall include all the lawful lineal descendants of the ancestor" (s. 20), which again is the normal meaning of the word. Within this meaning, children are necessarily issue; but issue are not necessarily children for grandchildren and descendants further removed may likewise be issue. Yet the word "issue" may be so used according to its context, as to be equivalent to the word "children." See *Central &c. Co.* v. *Helme*, 121 N. J. Eq. 406, 417; *Boston Safe Deposit & Tr. Co.* v. *Park*, 307 Mass. 255, 259, 260.

Article second of the will provides as follows: "I direct that this my will shall be construed and shall take effect for all purposes and in all respects as if Mary Carlyle Fitzgerald, daughter of my husband, William F. Fitzgerald, Jr., were a natural child of mine." The appellant would accord only a limited effect to this provision. He concedes that where children are mentioned in the will, the testatrix intended that her stepdaughter should take; but he asserts that Mary was not intended to participate in bequests in favor of the testatrix' "issue" because she was not in fact a "lawful lineal descendant" of the testatrix, and the testatrix did not expressly provide that the will should be construed and take effect as if Mary were "issue of mine." The Trial Court in effect so held, ruling that "the word 'issue' . . . should be given its ordinary and legal meaning . . . there being an absence of a contrary intention appearing in said last will . . . clearly or by necessary implication." The Court likewise ruled "that Mary Carlyle Fitzgerald is not 'issue' of the testatrix as contemplated by the provisions of Article Third, Section 1 of the . . . will."

The appellant argues at the outset that the ruling last quoted is a "conclusion of fact" which is conclusive in this court if there is evidence to support it. We do not so understand the law of this jurisdiction. It is true that construction of the will is governed by the intention of the testatrix, and that this intention is a question of fact (*Jones* v. *Bennett*, 78 N. H. 224, 229; *Osgood* v. *Vivada*, 94 N. H. 222) which was submitted for decision to the court below. While the findings of that court with respect to subsidiary questions of fact involved in the establishment of the surrounding circumstances are binding in this court if supported by competent evidence, determination of the ultimate fact of the intent of the testatrix, rests with the law court. It was so held in *Pettee* v. *Chapter*, 86 N. H. 419, 428, where the question received careful consideration. "It will not be denied that the ascertainment of the existence of surrounding circumstances is purely a fact-finding process, and of a nature to be classed with such issues in general. . . . [It] is clearly and appropriately the function of the court to which the determination of issues of fact is generally committed . . . . Although [the question of intention is] in a sense a question of fact, its ultimate decision rests with the law court. . . . This is the generally recognized rule. 'The construction of all *written instruments* belongs to the Court . . . .' 4 Wig., Ev. (2d *ed.*) s. 2556." *Pettee* v. *Chapter, supra,* 427, 428. See also, *State* v. *Railroad*, 70 N. H. 421, 433, 434; *Emery* v. *Dana*, 76 N. H. 483, 486; *Hogan* v. *Lebel*, 95 N. H. 95. The ruling that Mary Carlyle Fitzgerald is not "issue" within the meaning of article third, section 1, whether a "conclusion of fact" or a mixed finding of fact and ruling of law, is a determination of the ultimate fact of intention, the final ascertainment of which is for this court.

With the interpretation given to the will by the Trial Court, we are unable to agree. Granting that "issue" in its ordinary sense means what the statute provides it shall mean in statutory construction, its meaning in construction of the testatrix' will must be governed by her disclosed intention. That intention is first disclosed in the provisions of article second quoted above. It is to be noted that those provisions do not purport to establish a definition of the words "child" or "children" when used in the will, so as to include Mary Carlyle Fitzgerald, but rather establish an arbitrary hypothesis upon the basis of which the will "shall be construed and shall take effect for all purposes and in all respects." The pervasive hypothesis thus established is that Mary shall be considered "a natural child of" the testatrix. It follows that she intended in the

determination of Mary's rights under the will Mary should be considered as if she were a true child of the testatrix and take as such wherever a "natural child" would take. *Cf. Morse* v. *Osborne,* 75 N. H. 487, 488, 491; *Young* v. *Bridges,* 86 N. H. 135, 140. So far as the ordinary meaning of any words of the will must be varied to accomplish their purpose, the testatrix has directed that this shall be done. It is her direction not only that the word "child" shall be interpreted to include Mary, but also that any other words of the will shall be interpreted and "take effect" as if Mary were her child. The will is to be so construed "for all purposes and in all respects." The article discloses no purpose to vary the meaning of any particular language used in the will but rather to insure that Mary shall have under the will all rights which a true daughter would take.

Thus interpreting the provisions of article second, we proceed to consideration of the dispositive provisions of the will. Passing for the time being the disputed provisions of article third, section 1, which by themselves give no color to the testatrix' use of the word "issue," we turn to the provisions of article fourth establishing a trust fund to be divided into shares for the benefit of each of the "children of mine living at my death," and of "the issue of [each] deceased child of mine." Because of the provisions of article second the appellant concedes that Mary Carlyle Fitzgerald is entitled to the benefit of the trust estate as a "child" of the testatrix and the only "child" living at her death. As to such shares for the benefit of children article fourth provides, with respect to income, that a child shall be entitled to receive the net income quarterly, and so much of the principal as the trustees shall deem necessary or proper in order to provide suitable maintenance and support, and suitable care in times of illness, both to the child and "any issue of such child. . . properly dependent upon such child for support." Section 1, A. Paragraph B, following, provides that the trust as to such a share shall terminate when the testatrix' child reaches the age of thirty or at his or her death, whichever shall first occur, the principal to be then distributed (subject to the provisions of section 3 of the article), to the child if living, or if not "to his or her issue . . . such issue to take by right of representation"; or in the absence of issue, to the husband of the testatrix if then living.

Section 2 of article fourth contains provisions relating to shares of the trust estate to be administered for the benefit of issue of a deceased child of the testatrix. Paragraph A of this section pro-

vides the net income shall be paid quarterly to such issue, "or if and while during such continuance [of the trust] no issue of such deceased child is then living, to my issue from time to time living, —issue, in each case, upon each distribution hereunder to take by right of representation,— . . . ." Paragraph B of section 2 provides that the trust as to such shares shall terminate "upon the death of the last to die of all children of mine living at my death." The principal is then to be distributed to any living issue of the deceased child of the testatrix, such issue to take by representation; or if no issue is then living "to my issue then living, such issue of mine to take by right of representation"; or if no issue of the testatrix is then living to her husband if then living. These provisions for distribution are analogous to further provisions found in section 3 of the same article providing for the distribution of any share payable to a minor, upon the attainment of majority by such minor or upon his or her prior death, in which case the share is to be distributed to the minor if living, and if not "to his or her issue if any then living" or if no such issue are living "to my issue then living,— issue, in any of the cases aforesaid, to take by right of representation"; or if no issue of the testatrix are living to her husband, if he is then living.

The appellant contends that the character of the use thus made of the word "issue" in article fourth establishes an intention to exclude the stepdaughter of the testatrix from any gifts for the benefit of "issue" and thus to establish that she was not intended to take as "issue" within the meaning of article third, by which one-half of the residue is left "to any issue living at my death." This argument is based upon the distinction made between "issue of children" and "issue of mine," which is said to indicate a purpose to exclude Mary and her issue from benefits provided for issue of the testatrix. To illustrate the argument reference is made to the provision of article fourth, section 2, paragraph A, providing that income shall be paid to "my issue from time to time living" in the event that no issue of a deceased child, for whom the trust is to be originally established, shall be living at the time of payment. "If Mary were intended to be considered as the [testatrix'] issue," the appellant argues, "her issue would likewise be considered the [testatrix'] issue, and there would be no requirement for the gift over to the [testatrix'] issue in this article."

If it be assumed that the first taker under section 2 should be issue of Mary, a possibility which the appellant does not dispute,

and if subsequent death of that issue is also assumed, it is obvious that issue of Mary could not thereafter take because by hypothesis no such issue would be alive to qualify as issue of the testatrix. Accordingly under the gift "to my issue from time to time living," the income would be payable to beneficiaries who would actually be issue of the testatrix in law and fact, that is to say, to her own children or other descendants, then living. On the other hand, if it be assumed that a true grandchild or grandchildren of the testatrix should take first, and die, the bequest of the gift over "to my issue from time to time living" gives no indication whether this class was intended to include Mary or her issue, or to be restricted solely to lawful descendants of the testatrix.

The gift over, to "my issue" plainly might become necessary to permit use of the income during the continuance of the trust, which was to continue as long as children of the testatrix survived. If it is the appellant's thought that "my issue" could as well have been made the takers of the income in the first instance, rather than by gift over, it is sufficient to point out that the testatrix could not by such a bequest have carried out her fundamental scheme of establishing separate shares for each of her children and their lineal descendants.

We fail to see how the distinction made in article fourth between "issue of children" and "issue of mine" is, as the appellant contends, "a completely unnecessary refinement" unless interpreted to mean that beneficiaries participating as "children" should not participate as "issue" unless in fact lawful descendants of the testatrix. If provision had been made for separate gifts to contrasting classes, one class being "issue of children" and the other "issue of mine," the argument might carry weight; but this is not that case. The use of the phrase "issue of mine" is adequately accounted for by the establishment of cross remainders between the various trust shares to be originally established for children and issue of deceased children. Depending upon circumstances, the cross remainders might pass to children, to children of children, or to more remote issue of children, as the case might be. All such beneficiaries were aptly described by the comprehensive term "issue of mine," which described a larger group than "issue . . . of [a] deceased child." No more subtle use is discernible.

Certainly the phrase was not used in a sense exclusive of children and issue of children, for such an interpretation would operate to exclude from the benefit of article third, section 1, not only Mary

but also any true child of the testatrix, a purpose neither ascribed to her by the appellant nor reasonably to be assumed.

The argument that the distinction is an "unnecessary refinement" overlooks the fact that issue of the testatrix might be a larger class than issue of a deceased child. A gift to the former group which would include testatrix' surviving children would not be equivalent to a gift to living issue of a deceased child. If substituted for the latter gift in the provisions of section 2 B, which would be operative only upon the death of testatrix' last surviving child, it would destroy the plan for separate shares by distributing the principal of such a share among the living issue of all deceased children, instead of giving it to the issue of the particular deceased child for whose issue the share was originally established.

The appellant's argument also advances the suggestion that gifts over in favor of "issue of mine" were made in order to preclude ultimate benefit to Mary's mother; and it is argued that a like purpose is disclosed by the repeated withholding of any gift to the testatrix' husband, until after the decease of any children, issue of children, or issue of the testatrix.

No reason for the testatrix to be so motivated is suggested by the findings of fact, and the weight of the argument is not such as to overcome the express directions contained in article second. Mary is unquestionably entitled to take under article fourth as a "child" of the testatrix. In consequence, Mary's mother could benefit from Mary's share should Mary survive her father, as she did, and thereafter die without issue after reaching the age of thirty. Under article fourth, section 2 B, contingent gifts in favor of "my issue" cannot be said to indicate an intention to avoid benefiting Mary's mother. Mary could not here take as issue, because distribution depends upon the prior death of all children, including Mary.

The argument that the provisions in favor of the testatrix' husband were made contingent upon the failure or termination of prior interests in order (aside from tax considerations) to preclude a claim by Mary's mother upon the husband's interest disregards the right of the husband to waive the will and to take more than one-half or one-third of the estate, depending upon whether or not issue of the testatrix survived. R. L., c. 359, s. 12. So far as the provisions in favor of the husband are concerned, it may be argued with as much plausibility that Mary was intended to be issue within the meaning of article third, section 1 because she would be of age

and in a position to provide for her father, whereas any minor child of the testatrix, whether entitled to the whole or a part of this one-half of the residue, would not.

The appellant has considered in some detail the application of the will to the various contingencies which might have been anticipated at the time of execution. It is pointed out that if there should be no children of the marriage and Mary and her father alone should survive, the latter would take nothing if Mary was intended to be issue. This would also be true if only lawful issue and the husband should survive, a possibility which the will unquestionably contemplated. Moreover the argument disregards the husband's right in such a case to waive the will and take his statutory share, a right of which the testatrix is not to be presumed to have been ignorant. The same answer may be made to the argument that the testatrix may not reasonably be presumed to have intended that her husband should be cut off without benefit in the event she should be survived only by him and by minor issue of Mary. Mary's issue would similarly take subject to the husband's right to waive the will. The argument that the testatrix must have intended Mary's interest under the will to decrease as issue should be born to the testatrix, rather than that Mary should share equally with any such issue would be wholly speculative in the absence of the directions contained in article second of the will which contradict the argument. It cannot be considered of controlling effect in the face of those directions.

We are of the opinion that the provisions of articles third and fourth are controlled by the directions contained in article second; that by reason of these directions Mary is entitled to take whatever a natural or lawful child born to the testatrix would take; and that it was therefore intended that she should take as "issue." We consider article second a plain indication that Mary's rights should include the right to take as issue of the testatrix, and as if she were her "lawful lineal descendant," even though she was not. Although she was neither in fact or law a child of the testatrix, and hence not her issue, she was to be considered and the will construed "as if [she] . . . were." The interpretation directed by article second is confirmed by the provisions of article third. As the appellant has pointed out, the gift there made is to "my issue" and not to "my issue, if any." It conveys no suggestion of doubt that there would be issue to take. In view of the finding that the testatrix did not expect to be able to have children, it is a reason-

able inference that she understood that Mary would take under this provision in any event. As previously indicated, with respect to article fourth we cannot agree with the appellant that "the use of 'issue of mine' as a substitutionary gift over is meaningless" when this view is taken.

The decree of the Superior Court should be set aside and distribution made in accordance with the decree of the probate court.

In view of the conclusion reached, it is unnecessary to consider the admissibility in evidence of a memorandum of wishes executed by the testatrix on August 11, 1947, concerning property willed to Mary Carlyle Fitzgerald, which was excluded by the court below without examination, subject to the exception of the appellees.

*Appeal dismissed.*

All concurred.