Grafton County Probate Court
No. 92-567

## *In re* CLAYTON J. RICHARDSON TRUST

December 3, 1993

*Stebbins, Bradley, Wood & Harvey, P.A.*, of Hanover (*John S. Stebbins* and *Anne S. Duncan Cooley* on the brief, and *S. John Stebbins* orally), for Jean G. Edmundson and Bradford C. Gray.

*John I. Boswell*, of Hanover, by brief and orally, guardian ad litem for minors and unborn and unascertained persons.

*Orr and Reno, P.A.*, of Concord (*Malcolm McLane*, trustee u/w Clayton J. Richardson), filed no brief.

BATCHELDER, J.   Bradford C. Gray and Jean G. Edmundson, two of the beneficiaries under the Clayton J. Richardson trust (beneficiaries), appeal the decree of the Grafton County Probate Court (*Boyle*, J.) that "Clayton J. Richardson intended to benefit the issue of his deceased grandchildren in equal shares." They argue that the court erroneously interpreted the term "issue" to mean all descendants of the testator, thereby construing the trust as violating the rule against perpetuities. Finding no error, we affirm.

The trust was established by Clayton J. Richardson's will, which was executed in 1932. It provided for payments to the testator's wife and, after his wife's death, to his only child, Verna. At Verna's death, the trustee was directed "to pay the income of the trust equally to [Verna's] surviving children." Both the testator's wife and Verna are deceased.

Verna had two children, Clayton Gray and Jean Edmundson. Both were alive at the testator's death; both also survived her. Following Clayton Gray's death, the trustee petitioned the probate court for instructions, asking who should receive income from the trust, how long distributions of income should continue, when the trust should be terminated, and who would be entitled to receive the principal of the trust. At that time, Clayton Gray was survived by two children and a grandchild; Jean Edmundson was alive and also had two living children and a grandchild.

The following three paragraphs are at issue:

"(f) If any such surviving child shall decease leaving issue surviving, to pay to such issue, equally, the income share provided for such deceased parent.

(g) If any child of my daughter shall decease leaving no issue surviving, to pay her or his share to the surviving brothers and sisters, and in the event of their death, to their surviving children as provided in [paragraph] (f).

(h) If upon entire failure of issue, the income of this trust cannot be distributed as herein provided, said trustees shall distribute the same to the Mary Hitchcock Memorial Hospital, located at Hanover, N.H."

The probate court ruled that the trust income previously received by Verna's deceased child, Clayton Gray, should be distributed in equal shares to his issue until either no issue remain or the trust violates the rule against perpetuities. At that point, the principal of the trust is to be distributed pursuant to the provisions of intestate succession.

On appeal, we are governed by the findings of fact of the probate court "unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567-A:4 (Supp. 1992); *see also In re Lisa H.*, 134 N.H. 188, 191, 589 A.2d 1004, 1006 (1991).

Three well-settled rules govern our analysis of the matter at hand. First, the testator's intent is our principle guide in interpreting a will. *In re Estate of Sayewich*, 120 N.H. 237, 241, 413 A.2d 581, 583 (1980). Second, if no contrary intent appears in the will, words within the will are to be given their common meaning. *In re Dumaine*, 135 N.H. 103, 107, 600 A.2d 127, 129 (1991). Finally, the clauses in a will are not read in isolation; rather, their meaning is determined from the language of the will as a whole. *In re Segal Estate*, 107 N.H. 120, 121, 218 A.2d 53, 54–55 (1966).

The gravamen of the beneficiaries' argument is the meaning of the word "issue" as used in the will. "The word 'issue' is not ordinarily the equivalent of the word 'child' or 'children.'" *Sylvester v. Newhall*, 97 N.H. 267, 271, 85 A.2d 378, 381 (1952). Rather, "[t]he word 'issue' means child, grandchild, or other lineal descendant." *Kimball v. Penhallow*, 60 N.H. 448, 451 (1881); *see also Petition of Oliver Wolcott*, 95 N.H. 23, 25, 56 A.2d 641, 642 (1948) (interpreting "issue" in will drafted in 1932 as "lineal descendants"). This common definition was applied by the probate court.

The beneficiaries argue that the probate court erred in interpreting the word "issue" to include all the lineal descendants of the testator. In support of their argument, they direct us to paragraphs (f) and (g), which they assert use the term "issue" interchangeably with "children." They contend, therefore, that "issue" should be con-

strued to mean "children." Our reading of the will as a whole, however, supports the probate court's interpretation.

Although paragraphs (f) and (g) standing alone could be read as the beneficiaries maintain, paragraph (h) militates against the beneficiaries' argument. That paragraph provides for the distribution of trust income to the Mary Hitchcock Hospital "upon entire failure of issue." Such language, frequently used in wills, supports the probate court's interpretation that "issue" should be given its common meaning.

■ That the will was unartfully drafted is not contested. Faced with the task of interpreting a will where the testator's intent as expressed in the document was ambiguous, the probate court chose the commonly accepted legal meaning of "issue." We find no error in so ruling.

The beneficiaries further argue that because the probate court's interpretation violates the rule against perpetuities, we should adopt their interpretation, which, they contend, does not violate the rule. We disagree.

In the absence of statute, the rule against perpetuities, as part of the common law, has been adopted in its modern English form. J. GRAY, THE RULE AGAINST PERPETUITIES § 200 (R. Gray ed., 4th ed. 1942). The statement of the rule, if not its application, is straightforward: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." *Id.* § 201. Verna's living child, Jean Edmundson, who was alive at the time of the testator's death, is the remaining "life in being" for purposes of the rule's application.

Under paragraph (f), if one of Verna's children dies "leaving issue surviving," the trustee is directed to "pay to such issue, equally, the *income share* provided for such deceased parent." (Emphasis added.) Under the beneficiaries' interpretation, "income share" should be read as "principal," and one half of the trust proceeds should have been distributed outright upon the 1991 death of Verna's son Clayton Gray. Because the trust should, under this interpretation, be terminated on the death of Verna's remaining child, Jean Edmundson, the beneficiaries contend that the rule would not be violated. They argue that we must give the will this interpretation so as to avoid a clash with the rule. *See Citizens Nat. Bank v. St. Peters Lodge,* 102 N.H. 352, 355, 156 A.2d 768, 770 (1959).

■ Even setting aside the difficulties paragraph (h) poses for this interpretation, we find no support for the contention that "in-

come share" means "principal." "Share" is defined in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2087 (1961) as "one's full or fair portion." Consequently, "income share" means "income portion" and does not in any sense refer to principal. We therefore reject the beneficiaries' attempt to read the will in a manner that does not violate the rule.

■ Determining that the will violates the rule against perpetuities does not mandate that its provisions must entirely fail, however. Although the rule prevails in this State, *see Gale v. Gale*, 85 N.H. 358, 361, 159 A. 122, 124 (1932), it has never been "remorselessly applied," *Merchants &c. Bank v. Curtis*, 98 N.H. 225, 229, 97 A.2d 207, 210 (1953) (quotation omitted). Hence the testator's intent, as determined by the probate court, will be carried out to the fullest extent possible. *Edgerly v. Barker*, 66 N.H. 434, 475, 31 A. 900, 916 (1891).

■ The probate court directed the trustee to distribute income according to the provisions of the will until the rule against perpetuities is violated and, at such time, to distribute the trust principal according to the law of intestate succession. Accordingly, the testator's intent that the trust income should be distributed to his lineal descendants "shall take effect as far as possible." *Id.* We find no error in the probate court's interpretation.

In their brief, the beneficiaries also argue that the probate court erred in ruling that the trust income should be distributed *per capita* rather than *per stirpes*. Because they failed to raise this issue in their notice of appeal, however, we do not address it. SUP. CT. R. 16(3)(b); *Appeal of Toczko*, 136 N.H. 480, 487, 618 A.2d 800, 804–05 (1992).

*Affirmed.*

JOHNSON, J. , did not sit; the others concurred.