Taylor v. USA                                    CV-95-127-M    11/13/96 P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Richard Taylor,
        Plaintiff

v.                                                    Civil No. 95-127-M

United States of America,
        Defendant.


                            O R D E R


      Plaintiff, Richard Taylor, brings this action against the

United States of America, alleging jurisdiction under the Federal

Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq.

On October 19, 1995, the court granted the government's motion

for partial dismissal and dismissed Count 2 of the complaint

(intentional infliction of emotional distress) and that portion

of Count 1 which purported to state a claim for negligent

supervision of military personnel.


      In the sole remaining claim of his complaint, plaintiff

asserts that the government's failure to adequately supervise and

control the use of its military equipment and facilities

proximately caused his physical and emotional injuries.  The

government denies liability and moves to dismiss that claim or, in the alternative, for summary judgment.

**Facts**

In 1991, plaintiff was a member of the Cadet Rangers of America ("CRA"), a non-profit corporation organized under the laws of the State of New Hampshire "to develop character, physical fitness, leadership qualities and love of country in our youth." CRA Articles of Agreement. Roland Forest was president of CRA and Keith Morrissette was a member of its board of directors. Forest was also a member of the U.S. Army Selected Reserve.

The United States Army Reserve Unit (the "Unit") to which Forest was assigned is based at the Crafts Brothers Reserve Center, in Goffstown, New Hampshire. Non-profit groups were generally permitted to use the Reserve Center, provided such use did not conflict with the Unit's operations. Accordingly, the Unit permitted the CRA to use the Reserve Center as a meeting place. Although the CRA was allowed to store its equipment (such as camping gear and mock weapons) at the Reserve Center, the government claims that the CRA was not permitted access to any of

2

the Unit's military equipment. Plaintiff, on the other hand, alleges that on several occasions he and other CRA members used the Unit's equipment, including rifles, smoke grenades, flares, and vehicles.

On the weekend of August 16, 1991, plaintiff participated in a CRA-sponsored retreat, lead by Morrissette and Forest. The government did not endorse, organize, or sponsor the retreat. One purpose of the retreat was to provide plaintiff and the other cadets with "mock prisoner of war" training. The retreat took place at Temple Mountain, at a facility neither owned nor controlled by the government.

Plaintiff claims that in order to facilitate the mock POW exercise, Forest obtained certain military equipment, including "deuce and 1/2" trucks, M-16 rifles, gas masks, booby traps, and dummy grenades. The government denies that it authorized the CRA to use any such equipment or that Forest obtained that equipment from his Unit. Lieutenant Colonel Robert DeFusco, the Unit's former Executive Officer, states by affidavit that:

> The complaint alleges that "Deuce and 1/2" trucks were used during the weekend of August 16, 1991. The Unit did not posses such equipment and did not authorize Mr.

3

Forest to obtain such equipment from other military
Units.

The complaint also alleges that the Cadet Rangers had
items such as tear gas during that weekend.  The Unit
did not have tear gas, grenades, plastic booby traps,
or any ammunition, live or otherwise, at the Reserve
Center.  Any such materials would need to be
requisitioned from Fort Devens, Massachusetts.  The
requisition of such materials for use by the Cadet
Rangers would be unauthorized.  To the best of my
knowledge, no such equipment was ever requested for the
Cadet Rangers.  In fact, except for ammunition, no such
materials were ever used by the Unit during my tenure.

DeFusco Affidavit at paras. 14-15.

During the course of the retreat weekend, Forest and Morrissette subjected plaintiff, then age 15, to physical abuse. As part of the mock POW training, Forest and Morrissette took plaintiff into a room, tied his hands behind his back, suspended him in the air from a beam, slapped him, dug their fingernails into his chest, and placed duct tape on his genitals. Morrissette and Forest were subsequently indicted on a variety of felonies and misdemeanors associated with the weekend's events. Eventually, Morrissette pled guilty to criminal restraint and endangering the welfare of a minor.  Forest pled guilty to criminal restraint and simple assault.  Both were sentenced to terms of imprisonment.

4

Plaintiff says that the government is liable in tort for the injuries he sustained during (and following) the weekend in question because it: (i) routinely permitted the CRA to meet at the Reserve Center; (ii) provided the CRA with access to various types of military equipment; and (iii) breached its duty to supervise the use of its facilities and military equipment. Importantly, however, plaintiff does not claim that he was directly injured by the use or misuse of any of the military equipment allegedly taken by Forest from the Reserve Center. Instead, he claims that:

> [T]he United States' failure to exercise reasonable care in supervising and controlling its equipment, facilities, and supplies, was a substantial factor in leading to the plaintiff's injuries, because the cumulative effect of the utilization of the government facility itself, and the military weapons and supplies, over two (2) years, culminated in an atmosphere of authority and submission which rendered the plaintiff susceptible to the mock prisoner of war interrogation sessions [at which Forest and Morrissette assaulted him].
>
> * * *
>
> Thus, while the plaintiff could not clearly recall whether the duct tape [used by Forest and Morrissette when they assaulted him was military issue], and while the plaintiff cannot establish that a military rifle is what caused the actual physical injuries to him, the injuries which he received were the cumulative effect of the use of government equipment, supplies, and facilities for so many years, and on the weekend of the incident itself.

Plaintiff's memorandum in opposition to summary judgment at 14-15 (emphasis added).

In response, the government challenges the court's jurisdiction over plaintiff's claim, asserting that he has failed to demonstrate that the government owed (much less breached) any duty to him. The FTCA provides this court with jurisdiction over certain civil claims against the government only:

> under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The government asserts that plaintiff has failed to allege a recognized cause of action under New Hampshire law. Accordingly, it argues that plaintiff's claim does not fall within the limited waiver of sovereign immunity provided by the FTCA and, therefore, must be dismissed.

Moreover, the government asserts that it is entitled to summary judgment because even if plaintiff could identify an actionable duty, he has failed to demonstrate that his injuries were proximately caused by the government's alleged breach of

that duty. Finally, the government says that, when reduced to its essence, plaintiff's claim is based upon the government's alleged failure to prevent an assault and battery. Accordingly, it asserts that plaintiff's claim is barred by 28 U.S.C. § 2680(h), the assault and battery exception to the FTCA's waiver of sovereign immunity.[1]

As explained below, the court agrees that the government is entitled to summary judgment with regard to plaintiff's remaining claim.

## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling upon a party's motion for summary judgment, the court must, "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable

---

[1] Because the government is entitled to summary judgment with regard to plaintiff's common law tort claim, the court need not address the government's assertion that the assault and battery exception to the FTCA applies in this case.

7

inferences in that party's favor."  Griggs-Ryan v. Smith, 904
F.2d 112, 115 (1st Cir. 1990).

The moving party has the burden of demonstrating the absence
of a genuine issue of material fact for trial.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  If the moving
party carries its burden, the party opposing the motion must set
forth specific facts showing that there remains a genuine issue
for trial, demonstrating "some factual disagreement sufficient to
deflect brevis disposition."  Mesnick v. General Electric Co.,
950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985
(1992).  See also Fed. R. Civ. P. 56(e).  This burden is
discharged only if the cited disagreement relates to a genuine
issue of material fact.  Wynne v. Tufts University School of
Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507
U.S. 1030 (1993).  "In this context, 'genuine' means that the
evidence about the fact is such that a reasonable jury could
resolve the point in favor of the nonmoving party [and]
'material' means that the fact is one that might affect the
outcome of the suit under the governing law."  United States v.
One Parcel of Real Property, Etc., 960 F.2d 200, 204 (1st Cir.

8

1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

## Discussion

The parties agree that, under the FTCA, plaintiff's claim against the government is governed by New Hampshire law. <u>See</u> 28 U.S.C. § 1346(b). New Hampshire law is unremarkable in so far as it provides that "[t]he elements of negligence are a breach of a duty of care by the defendant, which proximately causes the plaintiff's injury." <u>Weldy v. Town of Kingston</u>, 128 N.H. 325, 330 (1986). <u>See also</u> <u>Goodwin v. James</u>, 134 N.H. 579, 583 (1991) ("In order to recover for negligence, a plaintiff must show that `there exists a duty, whose breach by the defendant causes the injury for which the plaintiff seeks to recover.'") (citation omitted).

It is, at best, doubtful that, under New Hampshire law, the government owed plaintiff a duty to supervise Forest's and Morrissette's alleged use of its military equipment <u>so as to prevent the sort of injuries that plaintiff sustained</u>. <u>See Corso v. Merrill</u>, 119 N.H. 647, 651 (1979) ("A person may be liable `only to those who are foreseeably endangered by his conduct and

9

<u>only with respect to those risks or hazards whose likelihood made</u>

<u>the conduct unreasonably dangerous</u>.'  His duty is `measured by

the scope of the risk which negligent conduct foreseeably

entails.'") (citations omitted) (emphasis added); <u>Manchenton v.</u>

<u>Auto Leasing Corp.</u>, 135 N.H. 298, 305-06 (1992) ("Not every risk

that might be foreseen gives rise to a duty to avoid a course of

conduct; a duty arises because the likelihood and magnitude of

the risk perceived is such that the conduct is unreasonably

dangerous.  `Nearly all human acts, of course, carry some

recognizable but remote possibility of harm to another.'")

(citation omitted).

In order to impose an actionable duty upon the government,

plaintiff must allege facts which demonstrate that his injuries

were reasonably foreseeable.   As observed by Justice Cardozo

nearly 70 years ago:

> [T]he orbit of the danger as disclosed to the eye of
> reasonable vigilance would be the orbit of the duty.
> One who jostles one's neighbor in a crowd does not
> invade the rights of others standing at the outer
> fringe when the unintended contact casts a bomb upon
> the ground.  <u>The wrongdoer as to them is the man who</u>
> <u>carries the bomb, not the one who explodes it without</u>
> <u>suspicion of the danger</u>.  Life will have to be made
> over, and human nature transformed, before prevision so
> extravagant can be accepted as the norm of conduct, the
> customary standard to which behavior must conform.

* * *

> Negligence is not a tort unless it results in the
> commission of a wrong, and the commission of a wrong
> imports the violation of a right, in this case, we are
> told, the right to be protected against interference
> with one's bodily security. But bodily security is
> protected, not against all forms of interference or
> aggression, but only against some. One who seeks
> redress at law does not make out a cause of action by
> showing without more that there had been damages to his
> person. If the harm was not willful, <u>he must show that
> the act as to him had possibilities of danger so many
> and apparent as to entitle him to be protected against
> the doing of it</u> though the harm was unintended.

<u>Palsgraf v. Long Island R. Co.</u>, 248 N.Y. 339, 343-45, 162 N.E.

99, 100-01 (1928) (emphasis added).


Here, the government owed plaintiff no duty to protect him

from Forest's and Morrissette's attack, because his injuries were

outside the "orbit of danger" reasonably associated with the

CRA's alleged use of the Unit's military equipment. <u>Cf.</u> <u>Walls v.

Oxford Management Co.</u>, 137 N.H. 653, 657 (1993) (stating New

Hampshire's "common law rule that private citizens ordinarily

have no duty to protect others from criminal attacks. . . .

`Under all ordinary and normal circumstances, in the absence of

any reason to expect the contrary, the actor may reasonably

proceed upon the assumption that others will obey the law.

Although crimes do occur, they are still so unlikely that the

11

burden of taking continual precautions against them almost always exceed the apparent risk.'") (citation omitted).

In short, it is not reasonably foreseeable that the use of military equipment by a youth group organized on military principles will likely lead to a criminal assault by the group's adult leaders on group members. But, even assuming for the purposes of this discussion that the government did owe plaintiff a duty to exercise reasonable supervision over the use of its military equipment, breach of that duty did not proximately cause plaintiff's injuries.

In order to prevail against the government, plaintiff must show more than that the government breached a duty owed to him. He must also set forth facts from which a reasonable person could find that the government's conduct proximately caused his injuries. See, e.g., Bronson v. Hitchcock Clinic, 140 N.H. 798, ___, 677 A.2d 665, 668 (1996) ("The plaintiff must produce evidence sufficient to warrant a reasonable juror's conclusion that the causal link between the negligence and the injury probably existed."); LeFavor v. Ford, 135 N.H. 311, 313 (1992) (holding that "proximate cause is a necessary element of

12

negligence."); <u>White v. Schnoebelen</u>, 91 N.H. 273, 274-75 (1941) ("There must be a connection between the assumed wrong and an injury suffered, or there is no ground upon which the wrongdoer can be charged.  Though there be a negligent act, it will not be ground for action unless it produces injury.") (citations omitted).

At this point, it is important to distinguish between "but for" causation and "legal" or "proximate" causation.  Again, New Hampshire law applies and the New Hampshire Supreme Court has noted:

> Unlike the fact of causation, with which it is often
> hopelessly confused, [proximate causation] is
> essentially a question of whether the policy of the law
> will extend the responsibility for the conduct to the
> consequences which have in fact occurred.  Quite often
> this has been stated, and properly so, as an issue of
> whether the defendant is under any duty to the
> plaintiff, or whether his duty includes protection
> against such consequences.

<u>McLaughlin v. Sullivan</u>, 123 N.H. at 341-42 (quoting W. Keeton, et al., <u>Prosser and Keeton on the Law of Torts</u> § 42, at 244 (4th ed. 1971)).  Accordingly, "[t]he decision to impose liability reflects a judicial determination that `the social importance of protecting [the plaintiff's interests] outweighs the importance

13

of immunizing the defendant from extended liability.'"  Id. at 342 (citation omitted).

Initially, whether proximate cause exists is an issue for the court to resolve.  If, however, the court determines that the evidence is such that a reasonable person could find legal fault or causation, the issue is submitted to the jury (or, under the FTCA, to the court for resolution on the merits).  MacLeod v. Ball, 140 N.H. 159, ___, 663 A.2d 632, 633 (1995); Hurd v. Boston & Maine R.R., 100 N.H. 404, 408 (1957).

Here, even viewing the facts in the light most favorable to plaintiff, it is evident his injuries were not a foreseeable consequence of, and so were not proximately caused by, the government's alleged negligence.  Assuming that the CRA had access to and actually used military equipment from the Reserve Center with permission, use of that equipment was not causally related to plaintiff's injuries.  His injuries were the direct and intended result of an assault and battery perpetrated by Forest and Morrissette.  Importantly, plaintiff has failed to point to any evidence from which a reasonable trier of fact might conclude that Forest or Morrissette used any of the military's

14

equipment to carry out that assault. In his deposition, plaintiff acknowledged that his injuries were not caused by any of the equipment that allegedly came from the Reserve Center. Plaintiff's Deposition, at 109-110. He also agreed that neither Forest nor Morrissette used the equipment to threaten or intimidate him into submitting to the physical assault. Id. at 78-79, 84, 106

Nevertheless, plaintiff says the government is responsible for his injuries because the CRA's alleged use of its military equipment over a period to two years created an environment in which he felt his will to resist Forest's and Morrissette's commands and, ultimately, their assault upon him, was compromised. See Plaintiff's Deposition, at 84-85, 107, 109; Plaintiff's memorandum in opposition to summary judgment at 14-15. This is the essence of plaintiff's tort claim — that the government's failure to diligently scrutinize the use of its facilities and equipment forseeably set the stage for an assault upon him by his group's adult leaders. While the use of a military facility and the presence of military equipment may have created the type of quasi-military environment plaintiff describes, Forest's and Morrissette's use of the facility and

15

equipment to set the stage for a criminal assault was neither foreseeable nor was it the proximate (or "legal") cause of plaintiff's actual injuries.  Stated somewhat differently, it was not reasonably foreseeable that Forest and Morrissette would employ military equipment from the Reserve Unit and the Unit's facilities as a meeting place over a period of two years in order to foster an environment of military discipline and authority (or a more sinister atmosphere of fear, subservience, and/or blind obedience) so that they might eventually encounter less resistance from plaintiff when they physically assaulted him.  Because plaintiff's injuries were not the reasonably foreseeable consequence of the government's alleged breach of duty (consisting of its alleged failure to adequately supervise the use of its equipment and facilities), the essential element of proximate causation is lacking.  See, e.g., Weldy v. Town of Kingston, 128 N.H. 325, 332 (1986) ("The requirement of proximate cause `confines the liability of a negligent actor to those harmful consequences which result from the operation of the risk . . . the foreseeability of which rendered the defendant's conduct negligent.'); Independent Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, 138 N.H. 110, 113 (1993) (holding that

16

"the test of proximate cause _is_ foreseeability.") (emphasis in original).

If plaintiff had been injured by (or even threatened with) the rifles, booby traps, or other equipment he claims Forest obtained from the Reserve Center, perhaps a different argument might be made; perhaps not.  It is clear from the record, however, that plaintiff's injuries were actually caused by Forest's and Morrissette's intentional criminal conduct.  The military equipment was not causally related to the abuses plaintiff suffered.  Plainly, neither the military equipment nor the government's alleged failure to adequately supervise the use of that equipment was a "substantial factor" in bringing about plaintiff's injuries.  See Demetracopoulos v. Wilson, 138 N.H. 371, 377 (1994) ("A defendant's conduct is a proximate cause of an individual's injury if it is `a substantial factor in bringing about the harm.'") (citation omitted).  Accordingly, the court concludes that no reasonable trier of fact could find that plaintiff's injuries were proximately caused by any governmental negligence.  See Hurd v. Boston & Maine R. R., 100 N.H. 404, 408 (1957) (holding that the court may find, as a matter of law, that "no reasonable man could find legal fault or causation.").

17

## Conclusion

For the foregoing reasons, the court holds, as a matter of law, that plaintiff's injuries were not proximately caused by any act or omission by the government. Accordingly, even if the government owed plaintiff a duty of care relative to use of its equipment and facilities in creating a military-type atmosphere (which it did not), breach of such a duty did not proximately cause plaintiff's injuries.

Plaintiff plainly suffered physical (and likely emotional) injuries as a result of the assault he endured at the hands of Forest and Morrissette. Nevertheless, the record demonstrates that the government's conduct did not proximately cause those injuries. Therefore, under New Hampshire's law of negligence, the government cannot be held liable for the harm inflicted upon him. While one might reasonably argue that "but for" the government's alleged failure to adequately supervise the use of its military equipment, like the use of trucks for transportation, plaintiff would not have been at the retreat, and therefore would not have been attacked by Forest and Morrissette, it does not follow that the government's conduct proximately caused plaintiff's injuries.

18

The government's motion for summary judgment (document no. 14) is granted.  The Clerk of the Court is instructed to close the case.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

November 13, 1996

cc:  Gary Casinghino, Esq.
     Gretchen Leah Witt, Esq.