M&D Cycle v. America Honda Motor      CV-01-355-JD  07/08/02

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


M & D Cycles, Inc.,
d/b/a Depot Honda Kawasaki

     v.                              Civil No. 01-355-JD
                                     Opinion No. 2002 DNH 127
American Honda Motor Co., Inc.


                             O R D E R


     The plaintiff, M & D Cycles, d/b/a Depot Honda Kawasaki

("Depot"), a Honda franchisee, brings this action against the

defendant, American Honda Motor Company ("Honda"), alleging

claims arising from Honda's establishment of a new Honda

franchise in Rochester, New Hampshire.  Depot filed suit in state

court, alleging claims of tortious interference with prospective

economic advantage, fraud, violation of New Hampshire Revised

Statutes Annotated ("RSA") 357-C:3, I, and breach of contract.

Honda removed the action to this court, and seeks summary

judgment on all claims.  Depot objects.


                          Standard of Review

     Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law.'" Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000), quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996).

When considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. See Davila-Perez v. Lockheed Martin Corp., 202 F.3d 464, 466 (1st Cir. 2000). The moving party must demonstrate the absence of genuine issues of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the motion is properly supported, the nonmoving party then must set forth facts showing that a genuine issue of material fact exists. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). An absence of evidence on a material issue weighs against the party who would bear the burden of proof on that issue at trial. See Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001).

Background

Depot is a motorcycle, all-terrain vehicle, and motor scooter dealership located in the town of Rye, in Rockingham County, New Hampshire. Depot is a franchisee of Honda and their business relationship is governed by the terms of three sales and service agreements, executed on January 26, 1994.[1] The agreements incorporate Honda's "Sales and Service Agreement Standard Provisions" ("Standard Provisions").

In 1996, Dover Honda, a motorcycle dealership located in the town of Somersworth, in Strafford County, New Hampshire, ceased operating. Honda did not take immediate steps to replace the dealership. In January of 1997, William Pugh, Honda's district sales manager, met with Cynthia Mailloux, the principle of Depot, and offered her the "opportunity to recoup the sales from Dover Honda and set a target of 30% market share in Strafford County by August 1997." N.H. Motor Vehicle Indus. Bd. Order, Case 0081, Apr. 27, 1999. Depot failed to capture a 30% target market share in Strafford County.[2] Id. In October of 1997, Pugh informed

---

[1] Three sales and service agreements separately govern Depot's franchise relationships with Honda. However, the language of each agreement is identical, save for the details of the product line governed.

[2] Depot does not dispute that it failed to acquire 30% market share by the August 1997 deadline.

Mailloux that Honda was establishing an "open point," or a location for a potential new dealer, in Strafford County. Pugh indicated that Rochester, New Hampshire, was the location of the open point, although the parties dispute whether Rochester was ever officially designated as an open point by Honda. The parties also dispute whether Pugh misrepresented to Mailloux that no dealer had then been approved for the open point.[3]

In September of 1997 Honda sent an application for a dealership in Rochester to Paul Gladstone, a prospective dealer, who completed and submitted the application to Honda. The record does not explain the disposition of Gladstone's application. However, in February of 1998 Honda sent another application for the proposed Rochester open point to Miles Cook. Mailloux was not notified of either application. Honda approved Cook for the dealership and issued a notice of intent on June 3, 1998, which required Cook to build a dealership on the proposed Rochester location no later than August 31, 1998. Cook did not meet the August 31 deadline. Honda granted two extensions to Cook, issuing a final deadline of February 1, 1999, to complete construction of the dealership.

Meanwhile, Mailloux and several Depot employees had observed

---

[3]The parties do not dispute that Honda does not always fill designated open points with new dealers.

4

the apparent construction of a Honda dealership in Rochester. On December 1, 1998, Mailloux called Pugh's supervisor, Honda Zone Manager Steven Nicholson, who admitted that Honda was opening a new dealership at the Rochester open point, but told her that no dealer had yet been approved, and she could submit an application.

Later that day, Pugh called Mailloux, and she requested an application for the Rochester dealership. Pugh replied that he would send an application, but that he did not believe Honda would accept her application because Rochester is a market contiguous to Rye, and Honda had a policy against dealers having dealerships in contiguous markets. Mailloux never received an application, and on December 17, 1998, she wrote to Nicholson again requesting an application. According to Mailloux, Nicholson left her an answering machine message that Depot would not be eligible for the new dealership in Rochester because Rochester is a market contiguous to Rye. Depot disputes that Honda had a policy prohibiting franchisees from operating dealerships in contiguous markets.

On March 9, 1999, Depot filed a protest with the New Hampshire Motor Vehicle Industry Board ("Board") pursuant to RSA 357-C:12, II(a). Depot claimed that Honda violated RSA 357-C:9, I, by proposing to establish a new dealership in Rochester, which

5

Depot contended was within its "relevant market area," without giving Depot adequate notice as required by that section.[4] The statute automatically requires a manufacturer to stay establishment of the new dealership until the Board has held a hearing on the protest. See RSA 357-C:9, I. Depot asserts that Honda proceeded with its dealership plans despite Depot's protest, thereby forcing Depot to file an emergency motion for a cease and desist order with the Board on April 9, 1999. Honda opposed the motion and argued that the proposed new dealership in Rochester was not within Depot's "relevant market area."

The Board issued a temporary order scheduling an emergency hearing on Depot's motion to cease and desist. After hearing evidence from both parties, the Board concluded that Depot did not meet its burden of showing that the Rochester dealership was located in its relevant market area, and therefore Depot lacked standing. See Board Order at 5-6. The Board dismissed Depot's protest for lack of jurisdiction under RSA 357-C:9, I. Depot filed a motion for rehearing with the Board, which was denied.

---

[4] RSA 357-C:1, XXI, defines "relevant market area" as:

"any area within the town or city where the motor vehicle dealer maintains his place of business or the area, if any, set forth in a franchise or agreement, whichever is larger. Relevant market areas shall be determined in accordance with principles of equity."

See Board Order on Rehearing, Case No. 0081, at 3 (June 14, 1999). Depot did not exercise its statutory right to appeal the Board's decision in state court.

Instead, Depot filed an "Amended Notice of Protest" with the Board on July 14, 1999, claiming that Honda's conduct in establishing the Rochester dealership was "arbitrary, in bad faith, or unconscionable," in violation of RSA 357-C:3, I. The parties engaged in discovery for close to two years. On June 25, 2001, Depot filed a motion for a voluntary nonsuit, to which Honda assented. Accordingly, the Board terminated Depot's action without prejudice on July 6, 2001.

Depot filed suit in state court on August 16, 2001, and Honda removed the action to this court. In Count I, Depot brings a claim of tortious interference with prospective economic advantage, alleging that Honda's conduct relative to the Rochester open point interfered with Depot's relationship with existing and prospective purchasers in and around Strafford County. In Count II, Depot claims fraud, alleging that Pugh and Nicholson made oral misrepresentations to Mailloux about the existence and approval of an open point in Rochester, that Honda intended for Depot to rely on those misrepresentations, and that Depot in fact did rely on those misrepresentations to its detriment. In Count III, Depot brings a claim that Honda

7

violated RSA 357-C:3 by engaging in unfair and deceptive practices. In Count IV, Depot brings a claim of breach of contract, alleging that Honda's conduct violated the fair dealing provision contained in the parties' sales and service agreements, and also that Pugh and Nicholson's statements to Mailloux created an oral franchise agreement that Honda breached by approving another dealer for the Rochester open point.

## Discussion

Honda moves for summary judgment on Depot's claims on their merits, and also on the ground that the claims are precluded by the doctrine of collateral estoppel. Depot objects.

As to Honda's collateral estoppel argument, this case is unusual in that the prior decision at issue was made by a state agency, not a state court, that applied state, not federal, statutory law. Cf. 29 U.S.C. § 1738 (providing that a state court decision has preclusive effect on a subsequent federal court action); Astoria Fed. Sav. and Loan Ass'n v. Solomino, 501 U.S. 104, 108 (1991) (holding that state court decision on statutory federal discrimination claim precluded subsequent federal case brought under same statute); Thomas v. Contoocook Valley Sch. Dist., 150 F.3d 31, 38 (1st Cir. 1998) (holding that state agency decision applying federal statute, reviewed by state

8

court, could preclude subsequent federal court action). In a case based on diversity jurisdiction, such as this one, the preclusive effect of an unreviewed decision of a state agency is not clearly established. Cf. University of Tennessee v. Elliott, 478 U.S. 788, 796-99 (1986) (determining that unreviewed state agency decision on federal civil rights claims precluded those claims in federal court). The parties have provided little guidance in this area. Therefore, the court will first determine if Honda is entitled to summary judgment on the merits.

A. Tortious Interference with Prospective Economic Advantage

In Count I, Depot brings a claim of tortious interference with prospective economic advantage, alleging that Honda interfered with its opportunity to sell motorcycles to existing and prospective customers in and around Strafford County. Honda moves for summary judgment on the merits, contending that Depot lacks evidence of prospective consumer relationships in Strafford County and cannot establish its claim.

A claim for intentional interference with prospective advantage or prospective contractual relations exists under New Hampshire law when "'[o]ne who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another and

9

thereby causes harm to the other.'" Baker v. Dennis Brown Realty, 121 N.H. 640, 644 (1981), quoting Bricker v. Crane, 118 N.H. 249, 252 (1981), citing Restatement (Second) of Torts § 766(B) (1979). To establish tortious interference with prospective economic advantage a plaintiff must show: (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference. Montrone v. Maxfield, 122 N.H. 724, 726 (1982); Baker, 121 N.H. at 644.

The economic relationship asserted by the plaintiff need not be reduced to a formal, written instrument, but there must be a promise, or the reasonable expectation of a promise, creating a duty recognized by law. See Heritage Home Health, Inc. v. Capital Region Health Care Corp., No. 95-558-JD, 1996 WL 655793, at *4 (D.N.H. Oct. 1, 1996), citing Restatement (Second) of Torts § 766 cmt. f; id. § 766(B) cmt. c; Roberts v. Gen. Motors Corp., 138 N.H. 532, 541 (1994). "A plaintiff may not base a tortious interference claim solely on his potential relationship with consumers in a given market." Fuller Ford, Inc. v. Ford Motor Co. and Ford Motor Credit Corp., No. 00-530-B, 2001 WL 920035, at *14 (D.N.H. Aug. 6, 2001); see also Roberts, 138 N.H. at 539-40 (affirming ruling that plaintiff's lost opportunity to become a

10

GMC franchise was insufficient to satisfy damages element of tortious interference with contractual relations claim).

Depot claims that Honda's conduct in establishing the Rochester franchise interfered with Depot's existing and prospective relationships with Strafford County customers. However, the record does not contain facts to support Depot's claim. Depot has not shown that a percentage of its customer base came from Strafford County. Depot has submitted no evidence that it had any reasonable expectation of economic advantage in Strafford County, other than a potential share of that market, which is an insufficient basis for its claim. See Fuller Ford, 2001 WL 920035, at *14. Absent a conflict of material fact on this issue, Depot's claim for tortious interference with prospective economic advantage fails. See Perez, 247 F.3d at 310. Summary judgment is granted in favor of Honda on Count I.

B.   Fraud

In Count II, Depot brings a claim of fraud, alleging that the information Mailloux received from Pugh and Nicholson regarding the availability of the Rochester open point was false and misleading. "To establish fraud, a plaintiff must prove that the defendant intentionally made a representation with knowledge of its falsity or with conscious indifference to its truth with

11

the intention to cause another to rely on it." <u>Snierson v. Scruton</u>, 145 N.H. 73, 77 (2000). In addition, the plaintiff must prove that he justifiably relied on the misrepresentation, to his detriment. <u>See</u> <u>Gray v. First N.H. Banks</u>, 138 N.H. 279, 283 (1994).

Depot asserts that in reliance on Pugh and Nicholson's misrepresentations, it acquired additional inventory, advertised in Strafford County, and expanded its Rye show room and service area to serve Strafford County. As a result of its reliance, Depot alleges, it has suffered lost profits, loss in value to its dealership, and other injury. Honda moves for summary judgment on the ground that Depot cannot establish a claim for fraud. Honda contends that to the extent Depot relied on Pugh and Nicholson's representations, its reliance was not justified, because the parties' agreements explicitly provide that only certain specific Honda personnel are authorized to make commitments on Honda's behalf.

The parties' sales and service agreements incorporate the Standard Provisions.[5] General Provision § 17.1 is titled

_____

[5]The court notes that the Standard Provisions contains a choice-of-law clause providing that the agreement shall be governed and construed by the laws of California. Neither party addresses this provision and the authority relied on by the parties is mainly from New Hampshire and federal courts of appeals. Neither party relies on California law to support its

12

"Authority to Sign for American Honda" and provides:

> DEALER ACKNOWLEDGES THAT ONLY THE PRESIDENT OR
> A DESIGNATED VICE PRESIDENT, SECRETARY OR ASSISTANT
> SECRETARY OF AMERICAN HONDA IS AUTHORIZED TO EXECUTE
> THE AGREEMENTS, OR AGREE TO ANY VARIATION, MODIFICATION
> OR AMENDMENT OF ANY OF THE PROVISIONS HEREOF, INCLUDING
> DEALERSHIP LOCATION OR CHANGE THEREOF OR TO MAKE
> COMMITMENTS FOR OR ON BEHALF OF American Honda.  No other
> employee of American Honda may make any promise or
> commitment on behalf of American Honda or in any way
> bind American Honda.  Dealer agrees that it will not rely
> on any statements or purported statements except from
> personnel as authorized hereinabove.  (capital letters
> in original).

It is undisputed that Pugh and Nicholson are not personnel authorized to bind Honda, as provided in General Provision § 17.1.  Depot provides no evidence of a material dispute of fact on this point.[6]  Depot agreed to rely solely on the representations of authorized Honda personnel, and Pugh and Nicholson are not so authorized.  Therefore, Depot was not justified in relying on their alleged misrepresentations.  Since Depot is unable to establish the justifiable reliance prong of its fraud claim, summary judgment in Honda's favor is granted on Depot's claim of fraud in Count II.

---

arguments relative to Depot's breach of contract claim.  To the extent that Depot's claim requires the application of law to the parties' agreements, the court deems the choice-of-law provision waived by the parties, and proceeds under New Hampshire law.

[6]Depot's sales and service agreements are all signed on behalf of Honda by John G. Petas, Senior Vice President.

13

C.    Violation of RSA 357-C:3, I

In Count III, Depot claims that Honda engaged in unfair and deceptive practices in violation of RSA 357-C:3, I.  Section 357-C:3 describes three types of prohibited conduct which are "unfair methods of competition and unfair and deceptive practices."  The first type of prohibited conduct, described in RSA 357-C:3, I, prohibits a manufacturer from engaging in "any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of such parties or to the public."  That section forms the basis for Depot's claim.  Parts II and III of the section prohibit other specifically described actions.

Depot alleges that Pugh and Nicholson's representations constitute fraud as defined both in common-law and in RSA 357-C:1, XIII, and that such fraudulent conduct was arbitrary, in bad faith, and unconscionable in violation of RSA 357-C:3, I. Honda argues that it is entitled to summary judgment on the ground that Depot cannot establish a fraud claim, because General Provision § 17.1 prevents Depot's justifiable reliance on Pugh and Nicholson.  Depot responds that § 17.1 violates RSA 357-C:3, III(m), which states that it is an unfair and deceptive practice for any manufacturer to "[r]equire a motor vehicle dealer to assent to a release assignment, novation, waiver or estoppel which would relieve any person from liability imposed by this

14

chapter." Depot argues that § 17.1 contradicts RSA 357-C:3, III(m), and therefore may not be asserted by Honda as a ground for summary judgment on Depot's claim brought under RSA 357-C:3, I.

Contrary to Depot's interpretation, § 17.1 merely names the Honda personnel authorized to bind Honda for the purposes of the parties' business relationship. Section 17.1 does not mention RSA 357-C or operate to deprive a dealer of the remedies provided by RSA 357-C. In agreeing to General Provision § 17.1, Depot was not placed in a position where it waived its right to relief under RSA 357-C:3, I, or any other section of that statute. Therefore, the question is whether Depot has shown evidence to support its statutory claim.

Depot asserts that Honda's fraudulent conduct constitutes action which is arbitrary, in bad faith, or unconscionable, in violation of RSA 357-C:3, I. Depot alleges that Honda's conduct amounted to common-law fraud, as well as fraud under RSA 357-C:1, XIII. Section 357-C:3 does not contain a definition of "fraud." Depot relies on RSA 357-C:1, XIII, which defines "fraud" as "includ[ing], in addition to its common law connotation, the misrepresentation, in any manner, of a material fact; a promise or representation not made honestly and in good faith, and an intentional failure to disclose a material fact." However, the

fraud definition relied on by Depot is referenced only in RSA 357-C:5, a section of the statute which addresses manufacturer indemnification for warranty repairs undertaken by a franchisee. It does not appear in the text of RSA 357-C:3 and has no bearing on what constitutes prohibited conduct under RSA 357-C:3, I, which forms the basis for Depot's claim. The fraud definition provided in RSA 357-C:1, XIII, is not applicable to Depot's action alleging unfair and deceptive practices.

While RSA 357-C:3 does not define the terms "arbitrary," "bad faith," or "unconscionable," RSA 357-C:14 provides that the statute shall be construed in accordance with the Federal Trade Commission Act, which describes a business practice as unfair if it has been established as such by a statute or "the penumbra of common-law." FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 244-45 n.5 (1972). In the absence of a statutory cause of action for fraud under the section, and pursuant to the guidelines of the Federal Trade Commission Act, the court construes Depot's allegations to state a claim of common-law fraud in violation of RSA 357-C:3, I.

The court has determined that § 17.1 prevents Depot's assertion that it relied on the representations of Pugh and Nicholson. Without justifiable reliance, Depot cannot establish a claim of fraud. Summary judgment is granted in favor of Honda

16

on Depot's claim in Count III, that Honda violated RSA 357-C:3, I.

D.    Breach of Contract

In Count IV, Depot brings a claim for breach of contract on two grounds.  Depot alleges that the conduct of Pugh and Nicholson breached the express fair dealing provision in the parties' sales and service agreements.  Depot also alleges that Pugh and Nicholson's representations to Mailloux formed an oral franchise agreement, that established Strafford County as part of Depot's market area.  Depot alleges that Honda then breached this oral franchise agreement by approving another dealer for the Rochester open point.

Honda seeks summary judgment, arguing that the parties' agreements do not allow for oral modification, and cannot be modified by Pugh and Nicholson because they are not authorized to bind Honda under General Provision § 17.1.  In its reply to Depot's objection, Honda argues that Standard Provision § 4, which expressly reserves to Honda the right to establish additional franchises where it deems appropriate, prevents Depot's fair dealing claim.

17

1.    Fair Dealing Provision

Honda first argues for summary judgment on Depot's breach of contract claim based on the fair dealing provision in its reply, which is impermissible.[7]  See Fed. R. Civ. P. 56(c); Local Rule 7.1(e)(1).  Therefore, Honda's motion for summary judgment on Depot's breach of contract claim in Count IV is denied, to the extent that the claim is based on the fair dealing provision contained in the parties' sales and service agreements.

2.    Oral Franchise Agreement

Depot argues that Pugh and Nicholson's representations constituted an oral franchise agreement.  In support of its contention Depot points to the language of RSA 357-C:1, IX, which provides that oral or written franchise agreements are governed by that section.  Nothing in the statute, however, operates to create a franchise agreement where none exists.

The parties' sales and service agreements state that they may be amended or modified only in writing.  See General Provision § 17.1.  Furthermore, neither Pugh nor Nicholson is authorized to create or modify agreements on behalf of Honda.  Depot has not shown, with facts in the record, that Pugh and

_____

[7]Depot did not move to strike Honda's reply.

Nicholson's statements to Mailloux created an enforceable franchise agreement. Therefore, no genuine dispute of fact exists as to whether a new franchise agreement was formed between Depot and Honda for the Rochester or Strafford County markets. Summary judgment is granted as to Depot's claim in Count IV that Honda breached a newly formed oral franchise agreement.

## Conclusion

For the foregoing reasons, Honda's motion for summary judgment (document no. 9) is granted as to Counts I, II, III, and IV, to the extent that Depot's breach of contract claim in Count IV is based on an alleged oral franchise agreement. Summary judgment is denied as to Count IV, to the extent that Depot's breach of contract claim is based on the fair dealing provision in the parties' agreements.

In light of the court's rulings, the parties should make a good faith effort to resolve this matter.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

July 8, 2002

cc:   James P. Bassett, Esquire
      Brandon F. White, Esquire
      Robert D. Cultice, Esquire
      Richard B. McNamara, Esquire

19