Hillsborough County Probate Court
No. 2000-270

IN RE DECLARATION OF TRUST MADE BY FREDERIC C. DUMAINE & a.

July 31, 2001

*Ransmeier & Spellman, P.C.*, of Concord (*John C. Ransmeier* on the brief and orally), for the petitioners.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Portsmouth (*Charles A. DeGrandpre* and *Sarah B. Knowlton* on the brief), for the respondents.

*Nicholas R. Aeschliman*, of Portsmouth, special guardian ad litem, joined in the petitioners' brief.

*Orr & Reno, P.A.*, of Concord (*Mary Susan Leahy* and *Gayle M. Braley* on the brief), as guardian ad litem to certain known and unknown potential beneficiaries.

DALIANIS, J. This is an interlocutory transfer without ruling from the Hillsborough County Probate Court (*Cloutier*, J.). *See* SUP. CT. R. 9. The petitioners, the trustees of a declaration of trust made by Frederic C. Dumaine and others, ask the court to determine whether the word "children" in the net income provision of the trust should be interpreted to include descendents of Dumaine who are neither his children nor grandchildren. The respondents, two of Dumaine's grandchildren, join in the petitioners' request. We hold that the settlor of the trust intended the word "children" to be interpreted literally.

The following facts were presented by the trustees and found by the probate court. The trust was created in 1920. The trust income is distributed during the life of the trust according to the net income provision set forth in article II, paragraph 3 of the trust instrument. Pursuant to this provision, the trustees must determine the net income of the trust annually and distribute one-half of it to the principal. The provision permits the trustees to distribute the other half "to the legitimate children of Frederic C. Dumaine or to their legitimate surviving children."

The trustees have sole discretion to determine who will receive income and in what amounts. The trustees are permitted to "omit all or any[one]" from the class of those to whom income is distributed. Despite this broad grant of authority, the trustees historically have distributed net income on a per stirpes basis, dividing it into equal shares with one share for each living child and one for each of the deceased children with living issue. They have paid one share to each of Dumaine's living children and one share on a representational basis to the legitimate living children of each deceased child. Since the death of the last survivor of Dumaine's seven children, the trustees have distributed one-half of the net income on a per stirpes basis to Dumaine's twelve grandchildren. The twelve grandchildren

now range in age from fifty-six to seventy-four, and thus it is likely that one or more of them will die before the trust terminates (at least twenty-one years from now).

In June 1999, the trustees petitioned the probate court to interpret the word "children" in the net income provision to refer not only to Dumaine's children and grandchildren, but also to later generations, thus permitting the trustees to distribute income to the children of deceased grandchildren. This interlocutory transfer followed. The parties appearing before us all advocate the construction advocated by the trustees.

■■ Whether the word "children" should be interpreted liberally or literally depends upon the intention of the settlor of the trust. *See Bartlett v. Dumaine*, 128 N.H. 497, 505 (1986). When interpreting an *inter vivos* trust evidenced by a written instrument, "the terms of the trust are determined by the provisions of the instrument as interpreted in the light of all the circumstances and . . . other competent evidence of the intention of the settlor with respect to the trust." *Id.* (quotation and brackets omitted). The "determination of the ultimate fact of the intent of the [settlor] rests with [this] court." *Sylvester v. Newhall*, 97 N.H. 267, 272 (1952); *see also In re Trust u/w/o Smith*, 131 N.H. 396, 397 (1988).

■■■ To determine the settlor's intent, we first look to the language of the trust. "In searching for the proper interpretation of words used in a written instrument, we require that the words and phrases be given their common meaning." *In re Dumaine*, 135 N.H. 103, 107 (1991) (quotation omitted). "The nature and extent of the interest given to trust beneficiaries is to be determined from the whole instrument and not from an isolated phrase." *Indian Head Nat. Bank v. Rawls*, 105 N.H. 142, 145 (1963). We examine extrinsic evidence of the settlor's intent only if the language used in the trust instrument is ambiguous. *See Bartlett*, 128 N.H. at 505.

The relevant portions of the net income provision are as follows:

> At the end of each calendar year the Trustees shall determine the net income of the trust; . . . [one-half] thereof the Trustees may in their sole discretion pay . . . to the legitimate children of Frederic C. Dumaine or to their legitimate surviving children. The Trustees shall have full discretion to decide to which of said children of Frederic C. Dumaine, or their said surviving children, payments shall be made, and the amount thereof including the right to omit all or any . . . .

■ "The word 'child' ordinarily means a son or a daughter; a descendent in the first degree." *Sylvester*, 97 N.H. at 271; *see also In re Merrill Estate*, 106 N.H. 99, 102 (1964) (the ordinary meaning of the word "children" does not include grandchildren). Relying principally upon *Edgerly v. Barker,* 66 N.H. 434 (1891), the parties argue that the word "children" may include later generations. We hold that in the context of this trust, the word refers to first generation descendents only.

The cases cited by the parties are distinguishable. For instance, the provision in *Edgerly*, unlike the net income provision, referred to the testator's grandchildren *and* their heirs. *Id.* at 449. In that context, we held that it was permissible for the children of deceased grandchildren to take from the will. *See id.* at 447-51.

Similarly, the will provisions in the state supreme court decisions cited by the parties, unlike the net income provision, *required* a per stirpes distribution. *See, e.g., In re Clark's Estate*, 59 A.2d 109, 113 (Pa. 1948) (where provision requires children to take per stirpes, the word includes grandchildren); *In re Estate of Englis*, 255 A.2d 242, 246 (N.J. 1969) (where provision requires grandchildren to take per stirpes, "the terms 'children' and 'grandchildren' are to be read in their broader sense, including their lineal descendents"). In *Estate of Englis*, the New Jersey Supreme Court ruled that the per stirpes distribution "indicate[d] that the testator was thinking in terms of five blood lines rather than individual grandchildren." *Id.* As the court explained, "[t]he inheritance of those children, the testator's great-grandchildren, furthers the testator's intent to benefit equally the five blood lines which issued from his surviving children." *Id.* By contrast, the net income provision expressly *permits* an unequal distribution in that it allows the trustees to omit beneficiaries from the distribution and does not require them to equalize payments out of future income.

■ Thus, we interpret the word "children" in the net income provision literally and construe it to permit the trustees to distribute one-half of the net income to Dumaine's children and, upon their demise, to Dumaine's grandchildren. *See Bartlett*, 128 N.H. at 503. Additional support for this interpretation is found in article III of the trust, which provides that when the trust terminates, the principal must be distributed "in equal shares to and among the legitimate issue or lineal descendents of the children of Frederic C. Dumaine living at that time, taking in each case by right of representation." Had Dumaine intended the trust income to be distributed to later generations, he would have used language similar to that in article III.

Although we believe the net income provision to be unambiguous, we note that the extrinsic evidence provided by the parties supports our construction. That evidence shows that Dumaine expressly declined to require either a per stirpes distribution of trust income or that the trustees hold amounts not distributed in reserve for the heirs of those to whom they elected not to make payments.

We disagree that a literal interpretation of the net income provision is illogical given Dumaine's intent to distribute the trust principal to all of his descendents upon the termination of the trust. Dumaine may have limited the distribution of trust income to first and second generation descendents to increase the size of the trust principal and intended later generations to have an interest in the trust principal only. The trustees' argument that Dumaine could not have intended there to be twenty or thirty years during which no income is distributed is belied by the language of the net income provision itself, which does not require the income to be distributed at all.

In sum, all of the circumstances and competent evidence of Dumaine's intent favor a literal interpretation of the word "children" in the net income provision. *See Bartlett*, 128 N.H. at 505.

*Remanded.*

NADEAU and DUGGAN, JJ., concurred.