Sullivan County Probate Court
No. 2010-297

IN RE ESTATE OF TIMOTHY M. DONOVAN

Argued: March 17, 2011
Opinion Issued: April 28, 2011

*Laboe Associates, PLLC*, of Concord (*John E. Laboe* on the brief and orally), for the petitioners.

*Bernstein Shur, P.A.*, of Manchester (*Andru H. Volinsky* and *Edward J. Sackman* on the brief, and *Mr. Volinsky* orally), for the respondent.

DALIANIS, C.J. The petitioners, Brian, James, June, Laura and Robert Donovan (the Donovan Family), appeal the order of the Sullivan County Probate Court (*Feeney*, J.) denying their summary judgment motion, granting the summary judgment motion filed by the respondent, Cathy C. Carter, and ruling that the Donovan Family is not entitled to a share of the proceeds from the sale of certain stock. We affirm.

The record reveals the following facts. The decedent, Timothy M. Donovan, died in June 2009. Article 4 of his will, executed on September 14, 2005, provided, in pertinent part: "All my intangible personal property, including but not limited to bank accounts, stocks, mutual funds, and the like, but *excluding shares in Optimum Manufacturing*, I devise and bequeath to [the respondent]." (Emphasis added.) Article 6 of the will provided:

> All the rest, residue and remainder of my estate, of every kind and description, and wheresoever situated, including but not limited to *my shares of stock and/or other interests in Optimum Manufacturing Corporation*, and the Optimum Real Estate, I give, devise and bequeath to that person or entity who is serving as my Trustee under a certain instrument or revocable trust heretofore executed by me and entitled the Timothy M. Donovan Revocable Trust of 2001 (the "Revocable Trust"), to be added to the property held in trust by him, and to be held and administered in accordance with the terms of said instrument as now provided and from time to time hereafter amended.

(Emphasis added.)

Also on September 14, 2005, the decedent executed the "THIRD AMENDED APPENDIX TO THE TIMOTHY M. DONOVAN REVO-

CABLE TRUST OF 2001" (Third Amended Appendix to Trust). Article 4 of the Third Amended Appendix to Trust, entitled *"DISPOSITIVE PROVISIONS: AFTER DEATH,"* instructed the trustee about distributing the trust estate upon the decedent's death. Article 4(C) provided, in pertinent part, that if, at the time of the decedent's death or incapacity, he owned or operated a business, either directly or by owning shares of stock, "including but not limited to the shares of Optimum Manufacturing Corporation" (Optimum Manufacturing), the trustee was authorized to "do all things related to the operation of the Business that [the decedent] could have done if living," including selling or liquidating the decedent's business interests "at such price and on such terms" as the trustee "may deem advisable."

Article 4(D) specifically authorized the trustee "[w]ithin a reasonable time after succeeding [the decedent] as Trustee," to "enter upon a process with respect to . . . selling" stock in Optimum Manufacturing to Optimum Manufacturing employees. If the trustee elected not to do this, then "the stock and/or assets of Optimum [Manufacturing] shall be operated and/or sold upon such terms" as the trustee deemed "prudent under the circumstances, in the sole discretion of [the] Trustee." Article 4(E) set forth a distribution scheme for the net proceeds from the sale of the assets of Optimum Manufacturing under which ten percent of the proceeds would go to the trustee, twenty-five percent of the proceeds would be distributed to the decedent's mother, petitioner June Donovan, if she survived him, forty-five percent would be distributed to the respondent, and twenty percent would be divided equally among his contingent remaindermen, petitioners Robert, Brian, Laura and James Donovan. Article 4(F) required the trustee to "apportion the balance of the principal and accumulated income of said trust estate, or the remaining principal and accumulated income of said trust estate, . . . to [the respondent]."

In August 2008, ten months before he died, the decedent sold all of his stock in Optimum Manufacturing and certain other Optimum Manufacturing assets to Optical Filter Corporation for $15 million. In November 2009, the Donovan Family filed the instant petition seeking a declaration that the proceeds from the sale of the decedent's Optimum Manufacturing stock passed to the trust upon his death, as set forth in article 6 of his will. The parties filed summary judgment motions on this issue. The respondent argued that the proceeds from the sale of the decedent's Optimum Manufacturing stock did not pass to the trust upon his death. The trial court ruled in the respondent's favor. This appeal followed.

Our standard for reviewing probate court decisions is set forth by statute. *See* RSA 567-A:4 (2007). "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." *Id.* "Consequently, we will not disturb the

probate court's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law." *In re Guardianship of Domey*, 157 N.H. 775, 778 (2008) (quotation omitted).

The Donovan Family argues that the trial court erred by granting summary judgment to the respondent. In reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *In re Estate of Raduazo*, 148 N.H. 687, 688 (2002). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *Id.* (quotation omitted). When no material issue of fact is in dispute, we will determine only whether the prevailing party was entitled to judgment as a matter of law. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

On appeal, the Donovan Family asserts that the proceeds from the sale of the decedent's Optimum Manufacturing stock passed to the trust upon his death, and that they are entitled to a portion of them under the distribution scheme set forth in Article 4(E) of the trust. The respondent counters that "the Estate holds the proceeds" from the sale of the decedent's Optimum Manufacturing stock, and that she is entitled to them under Article 4 of the will. We agree with the respondent.

We first examine the terms of the will. Three well-settled rules govern our analysis of the matter at hand. *In re Richardson Trust*, 138 N.H. 1, 3 (1993). First, the testator's intent is our principal guide in interpreting a will. *Id.* Second, if no contrary intent appears in the will, words within the will are to be given their common meaning. *Id.* Finally, the clauses in a will are not read in isolation; rather, their meaning is determined from the language of the will as a whole. *Id.*

Under Article 4 of the will, all of the decedent's "intangible property," except his Optimum Manufacturing stock, passed to the respondent when he died. The rest of his estate, including his Optimum Manufacturing stock, passed to the trust under Article 6 of the will.

The Donovan Family argues that the proceeds from the decedent's sale of his Optimum Manufacturing stock passed to the trust under Article 6 of the will. We disagree. Under the will's plain terms, the *only* intangible property that did not pass to the respondent was the decedent's Optimum Manufacturing stock. Article 4 bequeathed to the respondent "[a]ll" of the decedent's "intangible personal property, including but not limited to bank accounts, stocks, mutual funds, and the like, but *excluding shares in Optimum Manufacturing.*" (Emphasis added.)

■ ■ As the trial court aptly ruled, any bequest of the decedent's Optimum Manufacturing stock was adeemed when he sold the stock before he died. Ademption applies when a decedent no longer owns property specifically devised at the time of death, or when the character of that property has so changed as to be no longer identifiable. *In re Estate of Reposa*, 121 N.H. 114, 115 (1981). "A mere change in the form of the gift is not an ademption, but a complete change in nature and character is." *Id.* In *Estate of Reposa*, for instance, we held that the testatrix's devise of her farm to her legatee was adeemed when, four years before her death, she sold the farm in exchange for cash, a mortgage and a promissory note for payment. *Id.* at 114-15. We concluded that the farm's sale was a sufficiently radical change to constitute an ademption. *Id.* at 115.

■ It is well-settled that if, after a testator has executed his will in which he makes a specific bequest of corporate stock, the testator sells the stock and does not acquire other stock, an ademption occurs, and a legatee has no valid claim on the proceeds of the sale. *See* Annotation, *What Amounts to Ademption of Specific Legacy of Corporate Stock or Other Corporate Securities*, 61 A.L.R.2D 449, 452-53 (1958). New Hampshire follows this general rule. *See Owen v. Busiel*, 83 N.H. 345, 348, 349 (1928).

The testator in *Owen* executed a codicil to his will directing his executors to transfer to his daughter, immediately upon his death, certain stocks. *Id.* at 346. After the testator died, the executors, however, were unable to find the certificates for any of the stocks named in the will because the testator had apparently sold or transferred the stocks before he died. *See id.* at 348, 349. We held that "the subsequent transfer of the stocks operated as an ademption to nullify the specific legacy given by the codicil." *Id.* at 349. Similarly here, because the decedent sold all of his shares of Optimum Manufacturing ten months before he died, his bequest to the trust of Optimum Manufacturing stock was adeemed.

Thus, when the decedent died, *neither* his Optimum Manufacturing stock *nor* the proceeds from the sale thereof passed to the trust. The bequest of the stock was adeemed by his sale of the stock before he died, and the proceeds passed to the respondent under Article 4 of the will.

In arguing for a contrary result, the Donovan Family relies upon the distribution set forth in Article 4(E) of the Third Amended Appendix to Trust. The Donovan Family contends that because the will incorporated the trust by reference, it is necessary to review the trust's terms, and that under the Third Amended Appendix to Trust, the proceeds from the sale of Optimum Manufacturing must be distributed to the family according to the

schedule set forth therein. For the purposes of this discussion, we will assume, without deciding, that the trust documents are incorporated by reference into the will.

■ When interpreting an *inter vivos* trust evidenced by a written instrument, "the terms of the trust are determined by the provisions of the instrument as interpreted in the light of all the circumstances and other competent evidence of the intention of the settlor with respect to the trust." *In re Declaration of Trust by Dumaine*, 146 N.H. 679, 681 (2001) (quotation and ellipsis omitted). The "determination of the ultimate fact of the intent of the settlor rests with this court." *Id.* (quotation and brackets omitted). To determine the settlor's intent, we first look to the language of the trust. *Id.* "In searching for the proper interpretation of words used in a written instrument, we require that the words and phrases be given their common meaning." *Id.* (quotation omitted). We examine the instrument as a whole, and look to extrinsic evidence of the settlor's intent only if the language used in the trust instrument is ambiguous. *Id.*

■ Viewing the plain meaning of the trust, when examined as a whole, we conclude that the distribution to which Article 4(E) of the Third Amended Appendix to Trust refers applies *only* if, when he died, the decedent still owned shares of Optimum Manufacturing stock. Article 4(E) is part of Article 4, which specifically concerns the disposition of assets *after* the decedent's death. Article 4(E) is preceded by Article 4(D), which authorizes the trustee to sell the decedent's Optimum Manufacturing stock either to Optimum Manufacturing employees or "upon such terms" as the trustee deems "prudent under the circumstances, in the sole discretion of [the] Trustee." In context, then, the distribution set forth in Article 4(E) applies to the sale of stock that Article 4(D) authorized the trustee to make after the decedent's death. The plain meaning of these provisions evince the decedent's intent that the distribution of the proceeds from the sale of stock set forth in Article 4(E) applies only to a post-death sale of stock authorized by Article 4(D), and does not apply to the proceeds from any sale of stock that occurred before the decedent's death.

Therefore, even if the proceeds from the sale of Optimum Manufacturing stock had passed to the trust, because the sale occurred before the decedent died, the respondent would have been entitled to them under Article 4(F). For all of the above reasons, therefore, we uphold the trial court's decision.

We decline the parties' invitation to rule upon whether the Donovan Family is entitled to a share of the proceeds from the sale of the decedent's personal goodwill in Optimum Manufacturing. From the record submitted on appeal, it appears that this issue is not yet ripe for our review.

The record reveals that after the trial court issued its ruling, the executor filed a motion asking the court to clarify either that the decedent's personal goodwill was *not* the subject of that ruling or, "[i]f the court determines that the pleadings are ripe for decision with respect to [the decedent's personal goodwill], then amend its order to include specific direction" on that issue. The trial court denied the motion, stating: "The Executor has a job to perform, for which he charges a significant fee. The Court suggests that he needs to make the decisions that he has been empowered to make. Any party may then contest that decision." Under these circumstances, we decline to decide in the first instance whether any proceeds from the sale of the decedent's personal goodwill in Optimum Manufacturing should be distributed to the Donovan Family.

*Affirmed.*

DUGGAN, HICKS, CONBOY and LYNN, JJ., concurred.