NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

7th Circuit Court-Dover Probate Division
No. 2016-0130


DAVID A. HODGES, JR. & a.

v.

ALAN JOHNSON & a.

Argued: March 30, 2017
Opinion Issued: December 12, 2017


Bernstein Shur, P.A., of Manchester (Roy W. Tilsley, Jr. and Edward J. Sackman on the brief, and Mr. Tilsley orally), for the plaintiffs.


Upton & Hatfield, LLP, of Portsmouth (Russell F. Hilliard on the joint brief and orally), for defendants Alan Johnson and William Saturley.


Wadleigh, Starr & Peters, PLLC, of Manchester (Jeffrey H. Karlin on the joint brief), for defendant Joseph McDonald.


Glenn A. Perlow and Todd D. Mayo, of Hampton, for the New Hampshire Trust Council, as amicus curiae.

DALIANIS, C.J.  The defendants, Alan Johnson, Joseph McDonald, and William Saturley, appeal an order of the 7th Circuit Court-Dover Probate Division (Cassavechia, J.), which, following a bench trial, set aside "decantings" from two 2004 irrevocable trusts of which the plaintiffs, David A. Hodges, Jr. (David Jr.), Barry R. Sanborn, and Patricia Sanborn Hodges, had been beneficiaries, and which removed defendants Johnson and Saturley as co-trustees of those trusts.  "Decanting is the term generally used to describe the distribution of trust property to another trust pursuant to the trustee's discretionary authority to make distributions to, or for the benefit of, one or more beneficiaries."  William R. Culp, Jr. & Briani Bennett Mellen, Trust Decanting:  An Overview and Introduction to Creative Planning Opportunities, 45 Real Prop. Tr. & Est. L.J. 1, 2 (Spring 2010); see RSA 564-B:4-418(a) (Supp. 2016) (explaining that "[t]he power to decant is the power to appoint some or all of the trust property of a trust . . . to another trust").  The decantings at issue eliminated the future beneficial interests of the plaintiffs.  The trial court ruled that the decantings are void ab initio because McDonald, as the decanting trustee, and Johnson and Saturley, to the extent they assisted as co-trustees in facilitating the decantings, failed to "give any consideration to the [plaintiffs'] beneficial interests."  The trial court also determined that it "best serves the interests of all beneficiaries to order removal of . . . Saturley and Johnson as co-trustees."  We affirm.

I.  Pertinent Facts

The trial court found, or the record reflects, the following facts.  The settlor of the 2004 trusts was David A. Hodges, Sr. (hereinafter referred to as either David Sr. or the settlor).  David Jr. is one of the settlor's three biological children.  The settlor's other biological children are Nancy Hodges-Friese and Janice Hodges.  Barry and Patricia are the settlor's two step-children.  The settlor died in August 2015.

In 1969, David Sr. founded Hodges Development Company (HDC), now a relatively large and reportedly successful real estate holding and development company.  According to the defendants, HDC is "the parent entity of the Hodges enterprises."

McDonald was David Sr.'s attorney.  Saturley, who is also an attorney, has represented both David Sr. and HDC.  Johnson has worked for HDC since 1984 and is now its President.  He holds minority shares in two HDC entities, Hodges Pembroke, LLC and Hodges Portsmouth, LLC, and is a beneficiary of a revocable trust established by David Sr.  Under the terms of that revocable trust, Johnson is to receive $500,000 for his past service to HDC and an additional $500,000 over time for his continued service to HDC.

Some of David Sr.'s children and step-children have worked for HDC and/or its subsidiaries.  Barry worked for HDC for approximately 36 years,

2

rising to the position of Senior Vice President, before his employment was terminated in October 2012. When Barry's employment was terminated, he was working for HDC part-time, although he was paid a full-time salary. His underemployment was a source of friction between him and David Sr.

David Jr. also worked for the family business. In April 2012, however, he was informed that he would not be appointed President of HDC, but that Johnson would assume that position instead. The trial court found that "[t]his resulted in a confrontation" between David Sr. and David Jr., "the ferocity of which is disputed." David Jr. informed Barry of this development, and Barry confronted David Sr. about it. The trial court found that, although "the measure of discord is disputed, what is clear is that David, Sr. moved out of the family home, Barry had a heart attack, and a divorce action between [David Sr. and his then-wife, Joanne M. Hodges,] . . . ensued." When David Jr. returned to HDC headquarters, he discovered that armed guards had been hired allegedly to protect David Sr. and Johnson from Barry. David Jr. was fired from HDC in August 2012

Patricia testified that she has never held any corporate office or position at HDC. She also testified that, as of May 2015, she had not spoken with David Sr. in three or four years.

A. The 2004 Trusts in General

In 2004, the settlor created two irrevocable trusts, the "David A. Hodges, Sr. Irrevocable GST Exempt Trust" (the 2004 GST Exempt Trust) and the "David A. Hodges, Sr. Irrevocable GST Non-Exempt Trust" (the 2004 GST Non-Exempt Trust). (Capitalization omitted.) The 2004 trusts were products of decanting, but that decanting is not in dispute. The 2004 GST Exempt Trust contains assets that are exempt from the federal generation-skipping transfer tax; the 2004 GST Non-Exempt Trust contains assets that are not exempt from the federal generation-skipping transfer tax. When the two trusts were first created, Johnson was the sole trustee. Saturley was later appointed to be Johnson's co-trustee.

The beneficiaries of both trusts are Joanne and the settlor's five children and step-children and their "descendants," as defined by the trust instruments. The primary assets held in the trusts consist of all of the non-voting stock of HDC. The non-voting stock represents more than 98% of all HDC stock. The voting stock was held by David Sr. The 2004 trusts were created when market conditions made the transfer of non-voting stock of the family's closely-held business attractive to the settlor. The paramount purpose of the 2004 trusts was to provide for the continuation of HDC after the settlor's death by eliminating the need to liquidate HDC assets in order to pay estate taxes.

3

It was represented to the trial court that, in addition to the non-voting stock of HDC and cash dividends paid on those shares, the 2004 trusts currently hold stock in Hodges limited liability companies (Hodges Portsmouth, LLC and Hodges Pembroke, LLC) and the income generated by those limited liability companies.

Both trusts are irrevocable and both trust instruments contain a provision in which the settlor specifically acknowledged that he had "no right or power, whether alone or in conjunction with others, in whatever capacity, to alter, amend, modify or revoke" the trust instrument "or to designate the persons who shall possess or enjoy the trust property or its income."

Each trust instrument provides that, during the settlor's lifetime, the trust beneficiaries (Joanne, the plaintiffs, and the settlor's other children) had a right to withdraw from the trust whenever property was contributed to it. That right was exercisable within 60 days following a contribution.

Each trust instrument also provides for discretionary distributions, during the settlor's lifetime, to the beneficiaries and to "distributee trusts," which are subject to the beneficiaries' rights of withdrawal. The provision in each trust document regarding such discretionary distributions allows the trustee(s) to "distribute all or any portion of the net income and principal of the trust to any one or more of the group consisting of [Joanne], [the settlor's] descendants, and distributee trusts, in such amounts and at such times as the Trustee, in the Trustee's discretion, may determine." The trust documents define a distributee trust as "any trust being administered" under the trust instruments "for the benefit of any one or more, but not necessarily all, of the group consisting of [Joanne] and [the settlor's] descendants, or any trust established by [the settlor] under another trust instrument for the benefit of any one or more, but not necessarily all, of the members of such group."

The trust instruments specify that, upon the death of the settlor and of Joanne, provided that all five children are then living, the trust corpus is to be divided into five separate trusts for each of the settlor's children and step-children and their respective descendants. With respect to the separate trusts for the settlor's children and step-children, each trust instrument allows the trustee(s) to "distribute all or any portion of the net income and principal of the trust to any one or more of the group consisting of the child and his or her descendants in such amounts and at such times as the Trustee, in the Trustee's discretion, may determine."

The trust instruments set forth a list of considerations that the trustee(s) "should consider" when "deciding whether to make distributions of the net income or principal of any trust," although each trust instrument also states that the enumerated considerations are "not intended to limit or direct the exercise of [the trustees'] discretion in any way." One such consideration

4

states: "Whenever there is more than one beneficiary of a trust, distributions of income and principal may be made by the Trustee without obligation to equalize such distributions among the beneficiaries." Another states that Joanne "during her life should be deemed the primary beneficiary of the trust and her welfare, enjoyment, and comfort should be regarded as paramount to the conservation of the trust for the benefit of concurrent or remainder beneficiaries."

Each trust instrument also provides that "[t]o the extent that the Trustee is not required to make distributions of the net income of a trust, the Trustee is authorized, in the Trustee's discretion, . . . to accumulate income without allocation and at any time thereafter to add such income so accumulated to the principal of the trust."

Both trust instruments also contain a "No Contest Provision" whereby "[i]f any beneficiary . . . , directly or indirectly, institutes, conducts or in any manner whatsoever takes part in or aids in any proceedings to impair, invalidate, oppose, or set aside [the] trust, . . . then any and all provisions made for the benefit of such beneficiary . . . shall thereupon be revoked."

B.  Provisions in the 2004 Trusts Related to the Settlor's Closely-Held Business Interests

Each trust document contains provisions related to the settlor's closely-held business interests. The trust instruments define those business interests to include the stock of HDC, the stock of its three wholly-owned subsidiaries (Hodges Properties, Inc., Hodges Construction Corporation, and Hodges Realty, Inc.), and an interest in Hodges Family Farm, LLC. The trust instruments establish a "Committee of Business Advisors," who, by majority vote, have the exclusive authority, upon the settlor's death or incapacity or upon such earlier date as he may designate, to make all business decisions for his closely-held business interests (as defined by the trust documents). According to the trust documents, the initial members of the committee were Johnson, Barry, David Jr., Nancy, and a fifth member to be appointed by David Sr. The trust instruments empowered the settlor, while living and competent, to amend the provisions related to "the appointment, resignation, removal, and number" of the members of the Committee of Business Advisors, as well as "their powers, duties and liability."

During his lifetime, the settlor revised the membership of the Committee of Business Advisors on several occasions. As revised by the settlor in 2012, the members of that committee are: Johnson, McDonald, Saturley, Nancy, and Diane Benoit. Janice was nominated as a "Special Equity Voting Member" solely to exercise voting powers pertaining to "any voting equity interest" in a business and "not for the purpose of day-to-day business management and decision making."

5

The trust instruments include two provisions regarding distributions from the settlor's closely-held businesses, which state:

> Distribution of Business Interests. It is my desire, but not direction, that Business Interests not be distributed to any beneficiary, but rather remain in trust, so that they may be managed by the Committee of Business Advisors, if appropriate. Therefore, the Trustee shall not distribute any Business Interest to or for the benefit of any beneficiary without the written consent of a majority of the Members of the Committee, if the Committee is then in existence.

> Distributions from Businesses. It has been my experience that retaining cash and other liquid assets in [HDC and its subsidiaries] and my other businesses is necessary and desirable for the long-term success and viability of each such business. Accordingly, it is my strong desire and intent that each such business retain, and not distribute to its shareholders and owners, cash and other liquid assets, so as not to endanger the viability of such business.

## C. The Decantings

In 2009, David Sr. retained McDonald to assist him in his estate plans. McDonald testified that David Sr. was reconsidering his prior generosity toward Barry and Patricia. McDonald reported that he advised David Sr. that, although the 2004 trusts are irrevocable, the trustees of the 2004 trusts could decant the trust assets into distributee trusts that could be created for the benefit of some, but not necessarily all, of the beneficiaries of the 2004 trusts. McDonald represented that he told David Sr. that he would contact Johnson and Saturley to broach the subject of decanting with them.

McDonald testified that, when he contacted Johnson and Saturley, he told them that he would be willing to prepare new trusts for David Sr. that would reduce the beneficial interests of Barry and Patricia. He further testified that he explained to Johnson and Saturley that they had the discretion to decant the assets of the 2004 trusts into those new trusts. He also told them that he would be willing to serve as the decanting trustee.

The first decanting documents were not executed until October 2010. To accomplish the 2010 decanting, Johnson resigned as co-trustee of the 2004 trusts and was replaced by McDonald; Saturley then delegated his decanting power to McDonald, who executed the decanting documents. Once the decanting documents were executed, McDonald resigned as co-trustee, and Johnson was re-appointed. As a result of the 2010 decanting, Barry and

6

Patricia were specifically excluded from the definition of "descendants" contained in the trust documents.

McDonald testified that, in 2012, David Sr. again approached him, requesting that he initiate a further decanting to a new trust, because of the increasing discord between David Sr. and the plaintiffs. The 2012 decanting was accomplished in the same manner as the 2010 decanting: Johnson resigned as co-trustee and was replaced by McDonald; Saturley then delegated his decanting power to McDonald, who executed the decanting documents; and once the decanting documents were executed, McDonald resigned as co-trustee, and Johnson was re-appointed. As a result of the 2012 decanting, all three plaintiffs were specifically excluded from the definition of "descendants." The 2012 decanting superseded and replaced the 2010 decanting.

In 2013, McDonald was approached by either David Sr. or Saturley to decant the trusts again in order to eliminate Joanne's beneficial interests. The 2013 decanting was accomplished in the same manner as the 2010 and 2012 decantings. The 2013 decanting removed the beneficial interests of Joanne, in addition to excluding the three plaintiffs from the definition of "descendants." The 2013 decanting superseded and replaced the 2012 decanting.

Although the decanting documents were executed in 2010, 2012, and 2013, respectively, the assets of the 2004 trusts were not actually transferred then into the new trusts. Rather, the 2010, 2012, and 2013 decanting documents provide for the transfer of trust assets "immediately upon the [settlor's] death." Nonetheless, the trial court treated the decantings as if they had occurred when the decanting documents were executed. Because the parties have not argued that, in so doing, the trial court erred, we assume without deciding that it properly treated the decantings as if they had occurred in 2010, 2012, and 2013, respectively. In addition, because the parties have not argued otherwise, we assume without deciding that the fact that the assets were not to transfer until after the settlor's death did not, in and of itself, render the decantings void.

We observe that the trust assets still have not been transferred because the parties agreed that, after the settlor's death, all assets would remain in the 2004 trusts until the trial court ordered otherwise, and because the trial court stayed the transfer of assets from the 2004 trusts pending final judgment after resolution of this appeal.

D. The Trial Court's Decision

In April 2014, the plaintiffs filed the within petition, asking the court to declare the decantings void ab initio and to remove Johnson and Saturley as trustees. Following a three-day trial, the trial court ruled in the plaintiffs' favor.

7

The trial court did not invalidate the decantings on the ground that the defendants failed to act in accordance with the terms of the 2004 trusts because they decanted pursuant to the settlor's direction. Indeed, although the trial court came close to finding that the decantings were accomplished at the settlor's direction, it failed to so find. Instead, it found that "[t]he deeply personal and harsh nature of the decantings, along with the testimony of . . . McDonald, suggests that [the decantings] were undertaken and completed at the request, with the blessing, and at the direction of David, Sr." (Emphasis added.)

Nor did the court find that the defendants acted in bad faith when the decantings occurred. The court also did not find that Johnson's "substantial beneficial interest in a separate revocable trust controlled by David, Sr. . . . constituted an improper inducement that would justify voiding the decantings." Rather, the trial court invalidated the decantings on the ground that the defendants accomplished them without considering the plaintiffs' beneficial interests. This appeal followed.

II. Standards of Review

Court review of a trustee's exercise of a discretionary power of a trusteeship is generally deferential. See Wentworth v. Waldron, 86 N.H. 559, 562 (1934). "When a trustee has discretion with respect to the exercise of a power, its exercise is subject to supervision by a court only to prevent abuse of discretion." 3 Restatement (Third) of Trusts § 87, at 242 (2007) (bolding omitted); accord Wentworth, 86 N.H. at 562. "An abuse of discretion may result from the exercise of discretionary authority in bad faith or from improper motive." 3 Restatement (Third) of Trusts, supra § 87 cmt. c, at 244. It may also result from a trustee's improper failure to exercise his or her discretion. See id.; cf. In the Matter of Munson & Beal, 169 N.H. 274, 282 (2016) (observing that the failure to exercise discretion constitutes an unsustainable exercise of discretion and determining that the trial court's failure to consider the parties' premarital cohabitation rendered its division of their marital property unsustainable). Thus, "the court will interpose where a trustee fails to exercise or otherwise abuses discretionary authority because of mistaken interpretation of the terms of the trust or power, or a misunderstanding of applicable fiduciary law." 3 Restatement (Third) of Trusts, supra § 87 cmt. c, at 244. An abuse of discretion also occurs "when a trustee, even in good faith, exercises a power in a manner that is inconsistent with the duty of loyalty or the duty of impartiality." Id. (citations omitted).

Our standard of review of a circuit court probate division decision is determined by statute: "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567-A:4 (2007). Consequently, we will not disturb the probate

division's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law. In re Estate of Couture, 166 N.H. 101, 105 (2014).

We review the probate division's interpretation of a statute de novo. DeLucca v. DeLucca, 152 N.H. 100, 103 (2005). Resolving the issues in this appeal requires that we interpret provisions of the Uniform Trust Code, see RSA ch. 564-B (2007 & Supp. 2016). To do so, we rely upon our ordinary rules of statutory construction. See In the Matter of Ball & Ball, 168 N.H. 133, 137 (2015) (discussing interpretation of the Uniform Interstate Family Support Act). Under those rules, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Id. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id.

We also rely upon the official comments to the Uniform Trust Code. See id. When interpreting a uniform law, such as the Uniform Trust Code, "the intention of the drafters of a uniform act becomes the legislative intent upon enactment." Id. (quotation omitted).

Resolving the issues in this appeal also requires that we interpret provisions of the trusts at issue. "The interpretation of a trust is a question of law." In re Pack Monadnock, 147 N.H. 419, 423 (2002). "The rules of construction that apply to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of trust property." Shelton v. Tamposi, 164 N.H. 490, 495 (2013).

"It is well established in this jurisdiction that our courts have shown a signal regard for the intention of a settlor of a trust." In re Pack Monadnock, 147 N.H. at 423 (quotation omitted). We first look to the language of the trust instruments. See In re Estate of Donovan, 162 N.H. 1, 6 (2011). "In searching for the proper interpretation of words used in a written instrument, we require that the words and phrases be given their common meaning." Id. (quotation omitted). Moreover, we examine the instrument as a whole. Id. When, as in this case, we are construing inter vivos trusts evidenced by written instruments, we interpret the terms of the trust documents in light of all the circumstances and other competent evidence of the settlor's intent, Bartlett v. Dumaine, 128 N.H. 497, 504-05 (1986), as found by the trial court, In re Pack Monadnock, 147 N.H. at 423. The intent that matters for our purposes is the intent of the settlor when the trust was created. See id. (noting that, "[i]n ascertaining the settlor's intent, extrinsic evidence may not be used to vary or contradict the express terms of the trust"); see also Merrow v. Merrow, 105 N.H. 103, 106 (1963) (observing that "[a] different intent expressed by the

9

testator after the execution of his will would not be admissible to change the interpretation which is required by the express language of his will").

III.  Analysis

A.  Clarifying the Trial Court's Decision, Shelton v. Tamposi, and the Duty of Impartiality

The trial court voided the decantings because it found that the defendants accomplished them without considering "the interests of the beneficiaries."  RSA 564-B:8-801 (2007).  The court reasoned that, to consider the "interests of the beneficiaries," the defendants had to give "due regard for the diverse beneficial interests created by the terms of the trust."  3 Restatement (Third) of Trusts, supra § 79(1)(a), at 127 (setting forth common law duty of impartiality); see RSA 564-B:8-803 (2007) (setting forth statutory duty of impartiality, which requires a trustee of a trust with two or more beneficiaries to "act impartially in administering, investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests").

According to the trial court, giving "due regard" to those interests in the instant case required the defendants to "consider the effect of the decantings at issue on the [plaintiffs'] interests as beneficiaries," specifically to their financial interests, and to adjust "the structure of the decanting or choice of the method with which the beneficial interests might be permissibly modified."  The trial court found the decantings to be improper because, although the defendants gave "consideration to the terms and business purposes of the 2004 Trusts, [they] did not undertake and complete the other task required by law, namely, to give due consideration to the [plaintiffs'] . . . interests."  The defendants argue that in so ruling, the trial court erred.  We disagree.

For the purposes our analysis, we do not consider the plaintiffs' beneficial rights of withdrawal from the 2004 trusts because, given that the 2004 trust assets were not transferred during the settlor's lifetime and that the plaintiffs' withdrawal rights were only exercisable when he was alive, as a matter of law, those rights were unaffected by the decantings.

Before reaching the merits of the trial court's decision, we observe that, in reaching its conclusion, the trial court relied upon RSA 564-B:8-801, which requires a trustee to "administer, invest and manage [a] trust and distribute . . . trust property in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with this chapter." (Emphasis added.)  Citing our decision in Shelton, 164 N.H. at 499-500, the trial court mistakenly construed the phrase "interests of the beneficiaries" to impose the same duty upon a trustee as the statutory and common law duty of

10

impartiality impose. See RSA 564-B:8-803; see also Shelton, 164 N.H. at 500 (quoting 3 Restatement (Third) of Trusts, supra § 79(1)(a), at 127).

We now take this opportunity to clarify Shelton. Contrary to the trial court's decision, the phrase "interests of the beneficiaries" as used in RSA 564-B:8-801 is statutorily defined to mean "the beneficial interests provided in the terms of the trust." RSA 564-B:1-103(7) (2007). The phrase "interests of the beneficiaries" does not refer to the statutory duty of impartiality set forth in RSA 564-B:8-803. Nor does it refer to the common law duty of impartiality. To act in accordance with the "interests of the beneficiaries" as that phrase is used in RSA 564-B:8-801 requires only that the trustees act in accordance with the trust provisions that define those interests.

Although the trial court mistakenly relied upon RSA 564-B:8-801, that statute, by requiring a trustee to act "in accordance with this chapter," expressly incorporates the statutory duty of impartiality, see RSA 564-B:8-803. Thus, we construe the court's order to be a ruling that the defendants violated that statutory duty when they decanted the 2004 trusts. In other words and contrary to the position advanced by the dissent, by stating that the trustees were required to give "due regard for the diverse beneficial interests created by the terms of the trust," the trial court was, in fact, referring to the duty of impartiality. Similarly, when the parties, in their appellate briefs, discuss whether the trial court erred when it found that the defendants failed to give "due regard" to the plaintiffs' beneficial interests, they, too, are referring to the duty of impartiality. The phrase "due regard for the diverse beneficial interests created by the terms of the trust" denotes the duty of impartiality. See 3 Restatement (Third) of Trusts, supra § 79(1)(a), at 127 (setting forth common law duty of impartiality); RSA 564-B:8-803 (setting forth statutory duty of impartiality).

"The duty to act impartially does not mean that the trustee must treat the beneficiaries equally." Unif. Trust Code § 803, Comment (2010). Rather, the statutory duty of impartiality requires a trustee to treat the beneficiaries "equitably in light of the purposes and terms of the trust." Id. Thus, a trustee may prefer one beneficiary over another, if the terms of the trust so allow, without violating the trustee's duty to act impartially. See id. Indeed, the Uniform Trust Code specifically allows a trustee to "make distributions unequally among the beneficiaries," including making "distributions entirely to one beneficiary to the exclusion of the other beneficiaries," when, as in this case, "the terms of [the] trust permit distributions among a class of beneficiaries," and those distributions "are subject to the exercise of the trustee's discretion without a standard to guide the trustee in making distribution decisions." RSA 564-B:8-814(c) (Supp. 2016). A trustee may make such discretionary distributions provided that the trustee does so "in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." RSA 564-B:8-814(a) (2007); see RSA 564-B:8-

11

814(c) (stating that the provisions in paragraph (c) are "[s]ubject to the provisions of paragraph (a)").

The Uniform Trust Code also expressly allows a trustee to decant trust assets from one irrevocable trust (the first trust) to another (the second trust) "for the benefit of one or more" of the beneficiaries of the first trust. RSA 564-B:4-418(a) (Supp. 2008) (amended 2014). A trustee may not decant when doing so would reduce "any current fixed income interest, annuity interest, or unitrust interest of a beneficiary of the first trust." RSA 564-B:4-418(b)(2) (Supp. 2008) (amended 2014); see RSA 564-B:4-418(g)(1) (Supp. 2016) (providing that a "trustee may not decant to the extent that the terms of the second trust reduce or eliminate a vested interest of a beneficiary of the first trust"). Nor does decanting "abrogate the trustee's duty under RSA 564-B:8-801." RSA 564-B:4-418(e) (Supp. 2008) (amended 2014).

Consistent with our obligation to "construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result," In the Matter of Ball & Ball, 168 N.H. at 137, we conclude that the trustee conduct allowed by RSA 564-B:8-814(c) (making unequal distributions among beneficiaries) and RSA 564-B:4-418 (decanting) does not necessarily violate the statutory duty of impartiality set forth in RSA 564-B:8-803. To rule otherwise would render RSA 564-B:8-814(c) and RSA 564-B:4-418 superfluous. However, "[w]hen construing a statute, we must give effect to all words in [the] statute and presume that the legislature did not enact superfluous or redundant words." Winnacunnet Coop. Sch. Dist. v. Town of Seabrook, 148 N.H. 519, 525-26 (2002). Thus, a trustee, who makes unequal distributions among beneficiaries and/or eliminates a beneficiary's non-vested interest in an irrevocable trust through decanting, violates the statutory duty of impartiality only when the trustee fails to treat the beneficiaries "equitably in light of the purposes and terms of the trust." Unif. Trust Code, supra § 803, Comment.

Having now clarified our decision in Shelton, our interpretation of the trial court's decision, and our view of the statutory duty of impartiality, we examine whether the trial court's determination that the defendants failed to give any consideration to the plaintiffs' future beneficial interests, as required by the statutory duty of impartiality, is unsupported by the evidence or plainly erroneous as a matter of law, see In re Estate of Couture, 166 N.H. at 105.

B. Decanting

We first consider the purposes and terms of the 2004 trusts that bear upon this question. The trial court determined that the 2004 trusts "were created in order to take advantage of certain related tax benefits." The court found that "[t]he structure of the 2004 Trusts, namely creation of the Committee of Business Advisors and [certain] directives . . . , . . . indicate[ ] that they were formed to hold family business assets and provide for

12

continuation of the family business after the death of its founder." We agree with this construction.

Another evident purpose of the 2004 trusts is to support the beneficiaries. The 2004 trust instruments: (1) give the beneficiaries a right of withdrawal during the settlor's lifetime; (2) require the trustee(s), after the settlor's death, to distribute the net income of the trusts to Joanne "at least quarter-annually" and provide that, during her lifetime, she "should be deemed the primary beneficiary" of the trusts, and that "her welfare, enjoyment, and comfort should be regarded as paramount to the conservation of the trust for the benefit of concurrent or remainder beneficiaries"; (3) allow Joanne, during her lifetime, if she serves as the sole trustee, to distribute the net income and principal of the trusts to the remaining beneficiaries as she determines "to be necessary for any such beneficiary's health, education, and support in reasonable comfort in at least such beneficiary's accustomed manner of living"; (4) require that, upon Joanne's death, the trust principal and undistributed income be held in trust and disposed of for the benefit of the settlor's children; and (5) direct that the trustee(s) should distribute net income or principal to the beneficiaries as "reasonable and appropriate" for the beneficiaries' "welfare, enjoyment, and education." See Devine v. Cote, 109 N.H. 235, 237 (1968) (describing trust as "a trust for support"); see also RSA 564-B:4-404 (2007) (amended 2011) (providing that "[a] trust and its terms must be for the benefit of its beneficiaries"); RSA 564-B:1-105(b)(3) (2007) (amended 2011, 2014) (providing that "[t]he terms of a trust prevail over any provision of this chapter except . . . the requirement that a trust and its terms be for the benefit of its beneficiaries").

The trial court found, in effect, that the defendants failed to consider this trust purpose when they eliminated the plaintiffs' future beneficial interests through decanting. Specifically, the court found that "it was never sufficiently demonstrated . . . that the beneficial interests of any of the [plaintiffs] . . . were ever taken account of or considered." This finding has support in the record. For instance, McDonald, the decanting trustee and trustee of the distributee trusts, agreed that he "never gave [the plaintiffs'] financial interest any consideration." Additionally, as the trial court observed, the record does not include "emails, memorand[a], or letters concerning, or research into, . . . whether alternatives to complete disenfranchisement were considered or explored as a solution that would take into account both the 'terms and purposes' of the 2004 Trusts and the 'interests of the beneficiaries.'"

The defendants argue that because, by statute, the plaintiffs' future beneficial interests constitute "mere expectanc[ies]," eliminating those interests requires no further consideration. RSA 564-B:8-814(b) (Supp. 2016). We disagree with the defendants that the contingent and non-vested nature of the plaintiffs' future beneficial interests is dispositive of whether the defendants complied with their statutory duty of impartiality. The statutory duty of

impartiality is owed to all beneficiaries, regardless of whether their interests are present or future, vested or contingent.  See RSA 564-B:8-803 (providing that in order to act impartially, a trustee must give "due regard to the beneficiaries' respective interests" when "administering, investing, managing, and distributing the trust property"); see also RSA 564-B:1-103(2)(A) (2007) (defining the word "beneficiary" to mean "a person that . . . has a present or future beneficial interest in a trust, vested or contingent"); In the Matter of Goodlander & Tamposi, 161 N.H. 490, 496-97 (2011) (explaining that the trustee of a trust "owes a fiduciary duty to all beneficiaries of the trust," including a beneficiary whose interest in future distributions from the trust constitutes a mere expectancy).

The defendants also contend that eliminating the plaintiffs' future beneficial interests through the decantings is consistent with the main purpose of the 2004 trusts, which was to ensure that HDC continued after the settlor died.  The defendants assert that, because of intra-family conflict, as long as the plaintiffs continue to be beneficiaries of the trusts, there is a risk that they will engage in fractious litigation so as to force the defendants to liquidate HDC assets.

The trial court was not compelled on the record before it to credit those assertions.  See In re Guardianship of E.L., 154 N.H. 292, 296 (2006) (observing that we defer to the judgment of the probate division to "resolve conflicts in testimony, measure the credibility of witnesses, and determine the weight to be given to testimony, recognizing that as the trier of fact, it is in the best position to measure the persuasiveness and credibility of evidence" (quotations, brackets, and citation omitted)).  The 2004 trust instruments vest managerial control over HDC with the Committee of Business Advisors.  None of the plaintiffs has participated on that committee since 2012.  Moreover, the settlor had the discretion to revise the membership of that committee.  Further, under the 2004 trusts, the plaintiffs had beneficial interests in only non-voting stock of HDC.  As the trial court aptly found, and as the record supports,

> the power granted to David, Sr. to amend the composition of the Committee of Business Advisors, along with that committee's vast management power, the directives [in the 2004 trust instruments] concerning management of the assets of HDC, the non-voting nature of the stock that was [the trusts' primary] asset, . . . already limited, if not greatly diminished, the potential threat to HDC arising from intra-family discord.

Indeed, by eliminating the plaintiffs' future beneficial interests, the decantings actually increased the risk that the plaintiffs would engage in litigation.  As the trial court found, and as the record supports, although the "No Contest" provisions revoke the plaintiffs' beneficial interests if they institute proceedings to impair the trusts, by eliminating those interests

14

through decanting, the defendants left the plaintiffs with "nothing to risk" and "nothing to lose" under those provisions.

The trial court's determination that the trustees failed to give any consideration to the plaintiffs' future beneficial interests, contrary to the statutory duty of impartiality, is supported by the record and is not plainly erroneous as a matter of law. See 3 Restatement (Third) of Trusts, supra § 87 cmt. c, at 244 (an abuse of discretion may be found when a trustee fails to exercise discretion or when a trustee, "even in good faith," acts inconsistently with the duty of impartiality); see also Anne Marie Levin & Todd A. Flubacher, Put Decanting to Work to Give Breath to Trust Purpose, 38 Est. Plan. 3, 10 (Jan. 2011) (observing that when "a trustee has the power to make discretionary distributions of principal among one or more beneficiaries, the trustee may decant the assets to a new trust that eliminates one of those beneficiaries as a beneficiary of the new trust," but also acknowledging that "it is difficult to imagine the factual scenario where the trustee would not violate its fiduciary duty of impartiality owed to that [eliminated] beneficiary"). Therefore, we uphold it. See In re Estate of Couture, 166 N.H. at 105.

C.  Removal of Johnson and Saturley as Trustees

Alternatively, the defendants argue that the trial court's decision to remove Johnson and Saturley as trustees should be reversed. A court may remove a trustee to remedy a breach of trust, such as a breach of the duty of impartiality, "as provided in RSA 564-B:7-706." RSA 564-B:10-1001(b)(7) (2007); see RSA 564-B:10-1001(a) (2007) (providing that "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust"). RSA 564-B:7-706(b) (2007) authorizes court removal of a trustee when:

(1) the trustee has committed a serious breach of trust;

(2) lack of cooperation among cotrustees substantially impairs the administration of the trust;

(3) because of unfitness, unwillingness, persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries; or

(4) there has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.

15

The trial court in this case cited RSA 564-B:7-706(b)(1) and (3) to support its removal of Johnson and Saturley as co-trustees. The court determined that "[t]heir failure to consider the interests of the [plaintiffs] . . . was an abuse of their discretionary powers to decant, and given the obvious enmity and distrust between the parties," the court deemed their removal to be in the best interests of the beneficiaries.

We review the trial court's removal of Johnson and Saturley as trustees under our unsustainable exercise of discretion standard. See 2 Restatement (Third) of Trusts § 37 cmt. d, at 135 (2003) (explaining that whether to remove a trustee "is largely left to the discretion of the trial court, but is subject to review for abuse of discretion"); see also State v. Lambert, 147 N.H. 295, 296 (2001) (explaining our unsustainable exercise of discretion standard); Shelton, 164 N.H. at 505 (applying unsustainable exercise of discretion standard to review trial court's removal of a trustee because no party argued that a different standard of review applied).

The defendants contend that "there is no legitimate ground" to justify removing Johnson and Saturley as trustees. We disagree. The trial court could reasonably have concluded that Johnson and Saturley committed a "serious breach of trust" when they, along with McDonald, violated their duty of impartiality. See RSA 564-B:7-706(b)(1).

The defendants further argue that removal of Johnson and Saturley was not warranted absent a finding that they acted in bad faith, dishonestly, or out of self-interest or that they mismanaged trust assets. However, such findings are not required. See 3 Restatement (Third) of Trusts, supra § 87 cmt. c.

The defendants also observe that Johnson and Saturley consulted McDonald whom, the defendants contend, gave "expert advice" about the decantings. To the extent that the defendants intend this observation to constitute an argument, it is not sufficiently developed for our review. See Kilnwood on Kanasatka Condo. Unit Assoc. v. Smith, 163 N.H. 751, 753 (2012).

Based upon our review of the record, which supports the trial court's findings, we conclude that its decision to remove Johnson and Saturley as trustees was sustainable. See Shelton, 164 N.H. at 505. We leave for another day the issue of whether the defendants are entitled to indemnification for the fees and expenses incurred in this proceeding. As the parties acknowledge, the trial court has not yet ruled upon this issue. We decline to do so in the first instance.

Affirmed.

LYNN, J., concurred; BASSETT, J., dissented.

16

BASSETT, J., dissenting. I dissent because I believe that the majority errs by affirming the Trial Court (Cassavechia, J.) on an alternate ground that the trial court did not reach and that the parties have not briefed. Because the majority affirms on a ground not reached by the trial court or briefed on appeal by the parties, and because the court's opinion could have far-reaching, unintended consequences for trust and fiduciary law in New Hampshire, I would vacate and remand to the trial court. This approach would give the trial court the opportunity to address, in the first instance: (1) the circumstances under which a trustee violates the duty of impartiality when the trustee unequally distributes trust assets and/or eliminates a beneficiary's future interest in an irrevocable trust by decanting; and (2) whether the defendants, Alan Johnson, Joseph McDonald, and William Saturley, violated that duty when they eliminated the future beneficial interests of the plaintiffs, David A. Hodges, Jr., Barry R. Sanborn, and Patricia Sanborn Hodges, through decanting, while retaining two of the settlor's children as beneficiaries. At the absolute minimum, I would have this court, as it does on occasion, direct the parties to file supplemental briefs addressing these issues.

The trial court's ruling is relatively straight-forward. The trial court voided the decantings because it found that the defendants accomplished them without considering "the interests of the beneficiaries" as required by RSA 564-B:8-801 (2007) (providing that "the trustee shall administer . . . the trust and distribute the trust property in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with this chapter"). The court reasoned that, to consider those interests, the defendants had to give "due regard for the diverse beneficial interests created by the terms of the trust." (Quotation omitted.) The court ruled that giving "due regard" to those interests in the instant case required the defendants to "consider the effect of the decantings at issue on the [plaintiffs'] interests as beneficiaries," specifically to their financial interests, and to adjust "the structure of the decanting or choice of the method with which the beneficial interests might be permissibly modified." The trial court found the decantings to be improper because, although the defendants gave "consideration to the terms and business purposes of the 2004 Trusts, [they] did not undertake and complete the other task required by law, namely, to give due consideration to the [plaintiffs'] . . . interests."

The majority concludes that the trial court erred when it "mistakenly construed the phrase 'interests of the beneficiaries' to impose the same duty upon a trustee as the statutory and common law duty of impartiality impose." The majority explains that the phrase "interests of the beneficiaries" as used in RSA 564-B:8-801 is statutorily defined, see RSA 564-B:1-103(7) (2007), and does not, in fact, refer either to the statutory duty of impartiality set forth in RSA 564-B:8-803 (2007), or to the common law duty of impartiality. I agree with the majority that, in so ruling, the trial court erred.

17

The majority then uses what is essentially a harmless error analysis to say that the trial court's error is immaterial because the statutory duty of impartiality is incorporated by reference in RSA 564-B:8-801. The majority states that the trial court made a "determination" that the defendants violated the statutory duty of impartiality by failing to give any consideration to the beneficiaries' interests. The majority then concludes that the trial court's ruling is supported by the evidence and is not plainly erroneous as a matter of law. It is here that I part ways with the majority: I do not believe that the trial court's error was harmless.

I find the majority's approach problematic for several reasons. First, I believe that the majority misconstrues the trial court's order. The trial court differentiated between the duty of impartiality and the duty to consider the interests of the beneficiaries, explaining that "certain duties like prudence and impartiality are 'default rules' that may be modified by a settlor," while "trust terms may not altogether dispense with the fundamental requirement that trustees . . . behave . . . in a manner consistent with . . . the interests of the beneficiaries." (Quotation omitted.) The trial court recognized that there is an important distinction between the statutory duty of impartiality, see RSA 564-B:8-803, on the one hand, and the duties imposed by RSA 564-B:8-801, on the other hand. As the trial court observed, the duty of impartiality under RSA 564-B:8-803 can be modified, while the duties under RSA 564-B:8-801 cannot. Indeed, the trial court explained, "the decanting statute, by specifically reserving a trustee's continuing duty under RSA 564-B:8-801, see RSA 564-B:4-418(e) . . . , directly recognizes" the "overarching significance" of the duties set forth in RSA 564-B:8-801. Thus, I disagree with the majority that the trial court concluded that the defendants violated the statutory duty of impartiality. Had the trial court so concluded, it would have so stated.

The majority compounds its error by addressing an argument that the parties did not brief on appeal — the circumstances under which making unequal distributions among beneficiaries and/or eliminating the future interests of a beneficiary by decanting an irrevocable trust violate the statutory duty of impartiality. "The core of due process is the right to notice and a meaningful opportunity to be heard." Lachance v. Erickson, 522 U.S. 262, 266 (1998). "[D]ue process interests are implicated when a court recasts the questions presented and decides a case on issues not discussed by the parties without remanding or providing an opportunity for briefing." Barry A. Miller, Sua Sponte Appellate Rulings: When Courts Deprive Litigants of an Opportunity to be Heard, 39 San Diego L. Rev. 1253, 1260 (2002). I believe that it is fundamentally unfair to the parties and their counsel "to decide cases on issues where the parties had no opportunity to introduce evidence or make their best arguments." Id. at 1266.

Deciding issues that have not been briefed undermines our adversary process and increases the possibility that we will err. Our "adversary process

functions most effectively when we rely on the initiative of lawyers, rather than the activism of judges to fashion the questions for review." Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 195 n.4 (1994) (Stevens, J., dissenting) (quotations omitted). "The adversary system is based on the premise that allowing the parties to address the court on the decisive issue increases the accuracy of the decision." Miller, supra at 1260. Doing so also "increases the parties' sense that the court's process and result are fair." Id.

The possibility — indeed the virtual certainty — of unintended and unknown consequences of deciding this important issue of first impression should cause the court to proceed with extreme caution. This court has not had occasion to consider the interaction between New Hampshire's decanting statute and the fiduciary duties of a trustee, including the duty of impartiality. Indeed, "[b]ecause of the relatively recent increase in the popularity of trust decanting, few, if any, cases exist that clarify a trustee's fiduciary duties in the context of decanting or the extent to which he may (or should) exercise discretion to decant." Ivan Taback & David Pratt, When the Rubber Meets the Road: A Discussion Regarding a Trustee's Exercise of Discretion, 49 Real Prop. Tr. & Est. L.J. 491, 518 (2015); see Alan Newman, Trust Law in the Twenty-First Century: Challenges to Fiduciary Accountability, 29 Quinnipiac Prob. L.J. 261, 291, 292 (2016) (observing that "[t]here is very little case law on trust decanting," particularly case law analyzing "the extent to which traditional fiduciary duties . . . limit the remarkably broad powers to decant that many state legislatures have granted to trustees"). Commentators have correctly observed that "[p]resumably, the most problematic decantings will be those that alter beneficiaries' interests," such as the decantings at issue in this case. Newman, supra at 292.

In my view, the majority undermines the goal of the legislature when it revamped the trust and fiduciary laws: to make New Hampshire "the best and most attractive legal environment in the nation for trusts and fiduciary services." Laws 2008, 374:1. This decision does precisely the opposite: it makes New Hampshire a less attractive legal environment for settlors. We should tread with particular care in this area of law, deciding important issues of first impression only after they have been addressed by the trial court and fully briefed by the parties on appeal.

Finally, not only am I uncomfortable with the majority's willingness to decide these issues without full briefing, but I disagree with the substance of its decision. Even assuming that, as the majority decides, "a trustee, who makes unequal distributions among beneficiaries and/or eliminates a beneficiary's non-vested interest in an irrevocable trust through decanting, violates the statutory duty of impartiality only when the trustee fails to treat the beneficiaries equitably in light of the purposes and terms of the trust," I cannot, without the benefit of briefing by the parties and developed analysis by

the trial court, conclude that the trustees' actions violated the statutory duty of impartiality. (Quotation omitted). The trial court determined that the trusts' <u>primary</u> purpose is to "hold family business assets and provide for continuation of the family business after the death of its founder." The majority reads "[a]nother evident purpose" into the trust documents, namely "to support the beneficiaries," and then concludes that the trustees violated the duty of impartiality by not considering that specific purpose. I cannot agree with this expansive interpretation of the settlor's purpose. Notably, eliminating the plaintiffs' future beneficial interests through decanting, while retaining two of the original beneficiaries, is entirely consistent with the primary purpose of the trusts as found by the trial court.

For these reasons, I respectfully dissent. I would vacate the trial court's order and remand to the trial court for full development of the legal arguments regarding the circumstances under which a trustee violates the duty of impartiality by making unequal distributions and/or eliminates a beneficiary's future interest in an irrevocable trust through decanting, and whether the defendants breached that duty. The trial court would then undertake further fact-finding as necessary. I also would vacate the trial court's decision to remove Saturley and Johnson as co-trustees.